**Jolane RUSSELL, Appellant,**

v.

**UNITED PARCEL SERVICE, INC., Appellee.**

No. 81–1190.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 9, 1981.

Decided Dec. 15, 1981.

Kenneth O. Smith (argued), James Welsh, Knipmeyer, McCann, Fish & Smith, Kansas City, Mo., for appellant.

Joseph A. Sherman (argued), John M. Lilla, Jackson & Sherman, P. C., Kansas City, Mo., for appellee.

Before ROSS and STEPHENSON, Circuit Judges, and WOODS,[*] District Judge.

WOODS, District Judge.

In this diversity case plaintiff obtained a judgment against her employer, United Parcel Service, Inc. for $25,000.00 compensatory and $160,000.00 punitive damages based upon § 287.780 R.S. Missouri. This statute prohibits discrimination for the exercise of rights granted by the Missouri Workers' Compensation statutes. The trial court[1] sustained defendant's motion for judgment n. o. v. and in the alternative sustained defendant's motion for a new trial. We reverse the judgment n. o. v. and affirm the alternative order granting a new trial. We review the evidence in the light most favorable to plaintiff.

Plaintiff is a 40-year-old female truck driver assigned to pick-up and delivery routes in the Kansas City area. On September 8, 1976, while making deliveries on her assigned route, she was assaulted at gunpoint, blindfolded and repeatedly raped. At the hospital where she was taken by the police, plaintiff's superior criticized her for failing to first report the assault to her employer. As directed by her superiors, she

---

[*] Henry Woods, District Judge, Eastern District of Arkansas, sitting by designation.

1. The Honorable Russell G. Clark, Chief Judge, United States District Court for the Western District of Missouri.

reported for work the next day, gave a statement and worked at odd jobs in the headquarters building. On the following Monday she returned to her regular route and worked for two days accompanied by a supervisor. On Wednesday she was instructed to return unaccompanied to her regular route. She became hysterical, left work and reported to a rape crisis center. She was told that she could take time off and that medical treatment would be provided. She was off work from four to six weeks. After union intercession she was assigned to a different route. From time to time she would have a flashback to the rape incident. She began to see a psychologist on a weekly basis. There is evidence that plaintiff's superiors made it difficult for her to keep the appointments by assignment of her workload and that they were generally unsympathetic with her emotional problems.

On October 3, 1978 plaintiff injured her ankle while making deliveries. In spite of her telephone report of severe symptoms, she was instructed to continue on her route. It was subsequently determined that her ankle was fractured. There is evidence of similar rather callous treatment when plaintiff injured her back and later when she developed a dental infection.

Plaintiff claims that she was subjected to systematic harassment by defendant's supervisory personnel. They interferred with her medical appointments, removed her regular loader during the Christmas rush and reprimanded her for wearing a turtleneck sweater in cold weather, even though other employees were following a similar practice.

The Center Manager told her that she could be a supervisor if she would stop making so much trouble. She testified that line supervisors Reinhart and Terrazas told her that she was being treated in this manner because the center manager Kemp "was out to cause me as much trouble as possible for filing lawsuits and claims against the company." This latter testimony was focal to the granting of judgment n. o. v. The trial court regarded it as the "most favorable evidence in support of plaintiff's claim," but concluded that it "amounted to no more than a conclusion on the part of these two men completely absent any statement of fact to support their conclusion."

■ We do not agree. The testimony was received without objection.[2] That the statements constitute an opinion or inference concerning the discriminatory attitude of Kemp toward plaintiff does not mean that they should be disregarded as conclusions. Rule 701 of the Federal Rules of Evidence permits lay testimony "in the form of opinions or inferences" which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue." In this case the two line supervisors at UPS were clearly in a position to discern the attitude of the center manager Kemp toward the plaintiff. Their statements went to the very heart of the issue before the jury. Even before the adoption of the Federal Rules of Evidence, it was the prevailing view that admissions in the form of opinions were competent. *See* McCormick, *Evidence* § 264 (1972) and cases cited in footnote 32, p. 632. Professor McCormick also points out that the traditional view and the greater number of decisions hold that firsthand knowledge is not required where admissions are involved. McCormick, *supra*, § 263. In our view the statements of Reinhart and Terrazas were admissions. We make this determination only in relation to the trial court's statement in his memorandum opinion that there was no "statement of fact" to support their conclusions. As McCormick points out in § 263, *supra*, such is not necessary for quite logical reasons.[3] "If for instance the de-

---

**2.** Defendant argues that the extrajudicial statements of Reinhart and Terrazas were "the rankest of hearsay". The statements ultimately concerned the attitude of defendant's manager Kemp, which was highly relevant to this litigation. Defendant did not object to the testimony. His argument that objection was not necessary because of previous rulings by the trial court is without merit and is unsupported by the record.

**3.** "The requirement that a witness speak from

clarant obtained his information ... from another employee who might have made an admission with substantial probative force, Rule 805 would be satisfied."[4] Weinstein, *Evidence* § 801(d)(2)(D)[01] p. 801–158 (1979).

■ While we may agree with the trial court that the statements of Reinhart and Terrazas were the most favorable evidence adduced by the plaintiff, we are not convinced that the record is devoid of other evidence to support her claim. The plaintiff was the only witness in her behalf. Her testimony accorded with the statement of facts given at the outset of this opinion. If the jury believed her testimony, which it had the right to do, there is substantial corroboration of her claim that Kemp and other officials were discriminating against her because of workers' compensation claims. In short, we believe that there was enough evidence presented to take this case to the jury. *See Henderson v. St. Louis Housing Authority*, 605 S.W.2d 800 (Mo. App.1979). The standard for testing a motion for judgment n. o. v. is well settled.[5]

■ In the alternative the trial court granted defendant's motion for new trial. Rule 50(c) Fed.R.Civ.P. This court has the duty to review the appropriateness of the trial court's conditional granting of a new trial. *See Vander Zee v. Karabatsos*, 589 F.2d 723 (D.C.Cir.1978) and the cases cited therein, particularly *Lind v. Schenley Industries, Inc.*, 278 F.2d 79, *cert. denied*, 364 U.S. 835, 81 S.Ct. 58, 5 L.Ed.2d 60 (1960). The standard of review on the alternative order granting a new trial is far different from the standard applicable to a judgment n. o. v. The test is whether there was an abuse of discretion. We do not find such abuse. The trial court concluded that (1) the verdict was against the great weight of the credible evidence; (2) certain evidence was admitted that was highly prejudicial and of questionable relevancy; (3) certain evidence concerning the rape and its aftermath was highly inflammatory; (4) the size of the verdict was based on extensive testimony concerning the rape, some of which was irrelevant and not evidence of discrimination; and (5) it would be a manifest injustice to permit the verdict to stand. After reviewing the entire record in this case, we cannot hold that the trial judge abused his discretion in arriving at these conclusions.

■ Plaintiff also claims that the trial court erred in dismissing Count I of her complaint. In this Count plaintiff alleged that she was assaulted and raped by third

---

firsthand knowledge would seem to be applicable to hearsay declarations generally and it has sometimes been applied to admissions, but the traditional view and the greater number of decisions hold that it is not. These latter argue that when a man speaks against his own interest it is to be supposed that he has made an adequate investigation. While this self-disserving feature might attach to most admissions, we have seen that admissions are competent evidence though not against interest when made. As to these the argument does not apply, and it seems sufficient to justify the general dispensing with the knowledge qualification to say that admissions which become relevant in litigation usually concern some matter of substantial importance to the declarant upon which he would probably have informed himself so that they possess, even when not based on firsthand observation, greater reliability than the general run of hearsay. Moreover, the possibility is substantial that the declarant may have come into possession of significant information not known to his opponent." McCormick, *Evidence* § 263 (1974).

4. Rule 805, Fed.R.Evid. reads as follows: "Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules."

5. "(1) To consider the evidence in the light most favorable to the plaintiffs as the parties prevailing with the jury; (2) to assume that all conflicts in the evidence are resolved by the jury in favor of the plaintiffs; (3) to assume as proved all facts which the plaintiffs' evidence tends to prove; (4) to give the plaintiffs the benefit of all favorable inferences which may reasonably be drawn from the facts proved; and (5) to deny the Motion if, reviewing the evidence in this light, reasonable men could differ as to the conclusions to be drawn from it." Blackmun, J. in *Hanson v. Ford Motor Company*, 278 F.2d 586, 596 (8th Cir. 1960).

parties; that she was required to work in a hazardous area without protection; that the assault was foreseeable because of the hazardous conditions in the area; and that defendant's conduct constituted an intentional infliction of emotional distress. We find that the trial court correctly dismissed this count of her complaint. The Missouri courts focus on the nature of the injury to determine whether or not the workers' compensation remedy is exclusive. *Gambrell v. Kansas City Chiefs Football Club*, 562 S.W.2d 163 (Mo.App.1978). We believe that the Missouri Workers' Compensation statute provides a remedy for the sort of emotional distress which plaintiff alleges was inflicted upon her as a result of unsafe working conditions and the assault. *Todd v. Goostree*, 493 S.W.2d 411 (Mo.App.1973). The trial court correctly pointed out that a few courts (none in Missouri) have allowed employees to sue the employer for intentional infliction of emotional distress on the theory that an intentional injury cannot be accidental within the meaning of the Workers' Compensation Act. As pointed out by the leading authority in the field of workers' compensation, the facts of this case will not accommodate such a theory.[6] Work-related assaults are clearly covered by the Missouri Act. *Allen v. Dorothy's Laundry and Dry Cleaning*, 523 S.W.2d 874 (Mo.App. 1975). Missouri case law also holds that mental conditions are compensable under the Workers' Compensation Act. *Todd v. Goostree, supra; Wilhite v. Hurd*, 411 S.W.2d 72 (Mo.1967).

The order granting judgment n. o. v. is reversed, and the order granting a new trial is affirmed.

---

**6.** Even when the conduct of the employer "goes beyond aggravated negligence, and includes such elements as knowingly permitting a hazardous work condition to exist, knowingly ordering claimant to perform an extremely dangerous job, wilfully failing to provide a safe place to work, or even wilfully and unlawfully violating a safety statute, this still falls short of the kind of actual intent to injure that robs the injury of accidental character." A. Larson, *The Law of Workmen's Compensation*, § 68.13 p. 13–8.