**Alvin Aldrich HANSOME,
Plaintiff-Respondent,**

v.

**NORTHWESTERN COOPERAGE COMPANY, and Great Lakes Container Corp., Defendants-Appellants.**

**No. 65865.**

Supreme Court of Missouri,
En Banc.

Nov. 20, 1984.

**274**

Robert W. Stewart, Thomas M. Hanna, St. Louis, for defendants-appellants.

Leonard P. Cervantes, St. Louis, for plaintiff-respondent.

BILLINGS, Judge.

Statutory action for wrongful discharge as a result of plaintiff Hansome's exercise of his rights under the Missouri Worker's Compensation Act. Chapter 287, RSMo 1978. A jury awarded plaintiff $2,464.80 in actual damages and $35,000 in punitive damages. The Court of Appeals, Eastern District, reversed and held plaintiff failed to establish a submissible case. We granted transfer for conflict with the standard of review [1] and review the case as an original appeal, Mo. Const. art. V, § 10. We affirm.

In reviewing the submissibility issue, we consider the evidence in the light most favorable to plaintiff, give plaintiff the benefit of all inferences reasonably drawn from the evidence, and disregard defendant's evidence that does not support plaintiff's case. *Henderson v. St. Louis Housing Authority*, 605 S.W.2d 800, 803 (Mo.App.1979).

Hansome worked for defendant for one week, without complaint, before he suffered an injury compensible by worker's compensation. The injury occurred on August 31, 1977. Hansome, with defendant's knowledge, exercised his compensation right to receive medical treatment. During the treatment period, on October 17, 1977, defendant sent a discharge letter to Hansome. On October 31, 1977, Hansome was released from medical care. He promptly reported to work and asked John Tureen, defendant's plant manager, to explain the discharge. Tureen replied:

"Al, I am sorry about the discharge, about my discharging you, *but you got hurt on the job; you drew your Workmen's Compensation, and went back and forth to the doctor's office*, and I feel I just can't use any longer, because the problem we have we'll need everyone we can because the place is busy." (emphasis added)

In response, plaintiff indicated the accident was not his fault, and he was able to work again. The two went into Tureen's office; plaintiff explained that his last doctor's appointment was November 2; and Tureen

---

**1.** *See Arie v. Intertherm, Inc.*, 648 S.W.2d 142 (Mo.App.1983); *Henderson v. St. Louis Housing*     *Authority*, 605 S.W.2d 800 (Mo.App.1979).

told plaintiff to return to work after the final appointment.

On November 3, 1977, Hansome returned to work, but he was designated a new employee. Before plaintiff started to work Tureen changed his mind about rehiring Hansome:

"Mr. Hansome, ... 'I make a decision. I'm sorry I don't think I'm going to hire you back and it be best for me to stick with the letter that I sent you, you know,' and you know, 'in any event we start back hiring, it's possible that I may call you.'"

Plaintiff was unemployed for seventy-eight working days.

Section 287.780, RSMo 1978 provides:

No employer or agent shall discharge or in any way discriminate against any employee for exercising any of his rights under this chapter. Any employee who has been discharged or discriminated against shall have a civil action for damages against his employer.

The action authorized by this statute has four elements: (1) plaintiff's status as employee of defendant before injury, (2) plaintiff's exercise of a right granted by Chapter 287, (3) employer's discharge of or discrimination against plaintiff, and (4) an exclusive causal relationship between plaintiff's actions and defendant's actions. *See Davis v. Richmond Special Road District,* 649 S.W.2d 252 (Mo.App.1983); *Mitchell v.* *St. Louis County,* 575 S.W.2d 813 (Mo. App.1978). The first three elements are not challenged. We review the record to determine whether the causal relationship was demonstrated at trial.[2]

Cases have illustrated plaintiff's burden. In *Russell v. United Parcel Service, Inc.,* 666 F.2d 1188 (8th Cir.1981), the court interpreted Missouri law. Plaintiff alleged she was subject to discrimination for filing a compensation claim. The court held plaintiff's testimony alone was enough to submit the case to a jury. She testified that (1) she was subjected to systematic harassment after filing her compensation claim, and (2) she was told her treatment was a response to the suits and claims she initiated against defendant. In *Henderson v. St. Louis Housing Authority,* 605 S.W.2d 800 (Mo.App.1979), evidence indicated defendant's personnel manager told plaintiff he was fired for exercising his compensation rights. The case was properly submitted to the jury even though the manager denied making the statement and indicated he did not recall a conversation with plaintiff. Finally, in *Arie v. Intertherm, Inc.,* 648 S.W.2d 142 (Mo.App.1983), plaintiff prevailed in a wrongful discharge case. Arie was injured in the scope of her employment. On April 25, 1978, she felt a pain in her ears, apparently caused by excessive noise on Intertherm's work site. She exercised her compensation right to

**2.** Although the fourth element is often labeled discrimination, it is more accurate to use the shorthand *causality.* Missouri still adheres to the "at will" doctrine which allows an employer to fire an employee, without a durational contract, for any reason or for no reason. *Amaan v. City of Eureka,* 615 S.W.2d 414 (Mo. banc 1981), *cert. denied,* 454 U.S. 1084, 102 S.Ct. 642, 70 L.Ed.2d 619 (1981). The Worker's Compensation Act provides a limited exception to the "at will" doctrine. Absent a statutorily prohibited reason for discharge, in this case an exclusive causal relationship between the discharge and employee's exercise of rights granted by Chapter 287, RSMo 1978, employer is free to fire any employee at will. Missouri appellate courts have explored the causality element. It was missing in *Mitchell v. St. Louis County,* 575 S.W.2d 813 (Mo.App.1978). Plaintiff was discharged several months after filing for compensation. After her injury she missed many hours of work, both related and unrelated to the injury. She was fired for excessive absenteeism. Defendant's motion for directed verdict was sustained and affirmed. An employer may fire an employee for excessive absenteeism, even if the absenteeism is caused by a compensable injury. Causality does not exist if the basis for discharge is valid and nonpretextual. *Rodriguez v. Civil Service Commission,* 582 S.W.2d 354, 355 (Mo.App.1979). Rodriguez was discharged because she was "unwilling or unable to work". *Id.* Holding for defendant, the court explained that the Compensation Act, specifically § 287.-190, RSMo 1978, does not guarantee employee will be able to return to her old job. A directed verdict for defendant was sustained in *Davis v. Richmond Special Road District,* 649 S.W.2d 252 (Mo.App.1983). After suffering a compensable injury, Davis returned to work on a trial basis, but he was fired for being unable to perform his job.

receive medical treatment and went to the hospital on April 26, 1978. She returned for surgery on May 10. Between those dates, she exercised her compensation right to stay away from work until recovery from injury. A claim was not filed until June 8, 1978. On May 9, 1978 Arie told Mr. McClure, the man who hired her, that she was going to the hospital for surgery. McClure told her to come back on May 10 or be fired. McClure fired Arie when she went to the hospital instead of returning to work. This factual situation was submissible to a jury. *See, e.g., McKiness v. Western Union Telegraph Co.*, 667 S.W.2d 738 (Mo.App.1984).

■ We find plaintiff made a submissible case for the jury. His theory, supported by competent evidence, is that he was fired for exercising his right to receive medical treatment and he was never genuinely rehired. This caused him to lose 78 days of work and justified assessment of punitive damages.

Defendant's second point suggests the trial court committed prejudicial error by excluding certain statistical evidence. According to defendant's theory, Hansome was discharged because he could not be evaluated for an entire probationary period. Defendant claims Hansome was fired and then rehired in order to restart a 60 working day probation period. This theory refutes the causality element. As proof, defendant attempted to introduce evidence that certain permanent employees who exercised compensation rights had not been fired. Defendant relies on *General Motors Corp. v. Fair Employment Practices Division*, 574 S.W.2d 394 (Mo. banc 1978).

■ We find *General Motors* distinguishable. First, the proposed evidence would have been cumulative. Tureen testified unequivocally and without contradiction, that defendant's employees experienced a substantial number of minor injuries, that such employees exercised compensation rights, and none of them were fired. Considering the trial court's wide discretion concerning the admissibility of evidence, *Nielson v. Dierking*, 418 S.W.2d

146, 151 (Mo.1967), we cannot say reversible error was committed in excluding cumulative evidence. Second, the offered evidence was not of a similar class. In *General Motors*, the endorsed evidence would have shown treatment of *past probationary employees* to prove a probationary employee was subject to discrimination. In the instant case, defendant wanted to show the treatment of *past permanent employees* to prove a lack of discrimination against a probationary employee. Finally, the party to use the evidence is different. In *General Motors* statistical evidence was essential because of the "difficulty in obtaining specific evidence of discriminatory purpose in an individual case." *Id.* at 399. Deferring to trial judge's discretion, we find the proposed evidence cumulative and its exclusion harmless.

We have reviewed defendant's remaining assignments of error and find no prejudicial error in the trial court's rulings concerning the opening statements of the parties or in the admission and exclusion of evidence. The trial court is, of necessity, vested with broad discretion in these areas and its rulings are not to be disturbed unless a manifest abuse of discretion is demonstrated. We find no abuse of discretion.

The judgment is affirmed.

RENDLEN, C.J., and WELLIVER, HIGGINS and GUNN, JJ., concur.

BLACKMAR, J., concurs in separate opinion filed.

DONNELLY, J., dissents in separate opinion filed.

BLACKMAR, Judge, concurring.

I concur fully in the principal opinion. I write because Judge Donnelly's opinion is productive of unnecessary confusion.

Contrary to his assertion, the principal opinion does not hold that "an injured employee must be insured his subsequent return to work," and does not put "employers in an untenable position."

The plaintiff's case absolutely depends on his initial conversation with the foreman when he inquired about the reason for his discharge. The foreman told the plaintiff that his discharge was related to his having availed himself of the medical and hospital benefits available under the Worker's Compensation Law. It is not significant that the actual claim for compensation benefits had not been filed. The claim was imminent. It is customary for the employee to receive treatment as needed from the medical providers selected by the employer in advance of the filing of a formal claim for disability benefits.

The jury might conclude that the reason assigned by the foreman was the true reason, and also that this reason brought about the quick abortion of the decision to rehire. It must also have concluded that additional reasons assigned, such as the desire to restart the probationary period, represented afterthought. It was not compelled to accept the employer's explanation. The jury was properly instructed as to the causal relationship required to be shown and the evidence supported its finding.

The news of the initial conversation, when noised about the plant, well might have a chilling effect on the filing of compensation claims by other employees. Whether the conversation actually occurred or not is purely for the jury. The apprehensive employer need only instruct its supervisors that there must be no retaliation on account of the filing of compensation claims.

DONNELLY, Judge, dissenting.

As the principal opinion indicates, recovery is authorized under § 287.780, RSMo 1978, only if an exclusive causal relationship is demonstrated between plaintiff's actions and defendant's actions. This means that if the evidence demonstrates that the employer had cause for terminating the employment other than for the employee's exercise of his rights under the Workers' Compensation Law, the employee cannot recover. *Arie v. Intertherm, Inc.,* 648 S.W.2d 142, 149 (Mo.App.1983). The reason for this is that Workers' Compensation Laws are intended only to compensate employees for job-related injuries; they are not intended to insure job security. *Davis v. Richmond Special Road Dist.,* 649 S.W.2d 252, 255–56 (Mo.App.1983); *Rodriguez v. Civil Service Commission,* 582 S.W.2d 354, 356 (Mo.App.1979).

In this case, the employer's termination letter of October 17, 1977, was sent three days *before* Hansome filed his Workers' Compensation claim on October 20, 1977. Hansome received full benefits under the Workers' Compensation Law, and nothing in the record suggests that Great Lakes did anything to discourage, thwart, or hamper him in the pursuit of his rights. His employer's explanation for the discharge was its need for a full complement of employees due to the workload, and its inability to assess his job performance at the end of his sixty working day probationary period because he had only worked one week during that time. It was willing to rehire him as a probationary employee to give him a second opportunity to demonstrate his ability, and to provide itself time to evaluate his performance. Under these facts, the jury could not reasonably conclude that Hansome's exercise of his rights under the Workers' Compensation Law constituted the exclusive cause of his termination by Great Lakes.

In requiring that an injured employee must be insured his subsequent return to work, the principal opinion puts employers in an untenable position. *See Davis,* 649 S.W.2d at 255–56. This was not the intent of the Workers' Compensation Law.

I respectfully dissent.