William WIEDOWER,
Plaintiff-Appellant,

v.

ACF INDUSTRIES, INC.,
Defendant-Respondent.

No. 49084.

Missouri Court of Appeals,
Eastern District,
Division Four.

Aug. 26, 1986.

James M. Martin, St. Louis, for plaintiff-appellant.

Stephen Hereford, Clayton, for defendant-respondent.

PUDLOWSKI, Judge.

Plaintiff William Wiedower appeals from a post-trial order granting the defendant's motion for a new trial after a jury returned a $70,000.00 verdict in favor of the plaintiff in a civil action for retaliatory discharge under § 287.780, RSMo 1978. We affirm.

The plaintiff had been employed by the defendant, A.C.F. Industries, Inc., as a production foreman for approximately two months when, on September 8, 1978, he suffered an injury to his back that was work related and required extensive surgery. The plaintiff reported the injury to the defendant who treated it as non-occupational and processed it through the employee's group health insurance plan. During the following months of treatment, the plaintiff maintained periodic telephone contact with Eugene Tonkovic, the defendant's senior industrial relations manager. The plaintiff testified that Mr. Tonkovic assured him that he was taking care of the plaintiff's compensation claim. Later, Mr. Tonkovic told the plaintiff that he should consider retraining himself and that once he was rehabilitated, he would be given another job with the company. Mr. Tonkovic denied making these statements. Mr. Wiedower became concerned about the representations of the defendant and consulted an attorney. After discussing the situation with the attorney, the plaintiff contacted Mr. Tonkovic during the final week of February, 1979. At that time according to the plaintiff's testimony, Mr. Tonkovic was informed that the plaintiff had consulted an attorney and was considering filing a workers' compensation claim. The plaintiff also testified that in response to this infor-

mation, Mr. Tonkovic advised him not to file a claim because he would end up with very little money, and he further stated, "[I]f you are in a canoe full of people in the water, you don't want to stand up."

Mr. Wiedower met with his attorney on March 1 to fill out the claim form. During this meeting the attorney attempted to contact Mr. Tonkovic by telephone. When that proved unsuccessful, he left a message for Mr. Tonkovic. On March 3, the attorney mailed the claim to the Missouri Division of Workers' Compensation and a letter to the defendant demanding payment of an outstanding medical bill. On March 6, the claim was received by the Division of Workers' Compensation, and Mr. Tonkovic unsuccessfully attempted to return the attorney's phone call.

The defendant drafted a termination letter dated March 1, 1979, and mailed to the plaintiff on March 6 after final company approval. It discharged the plaintiff as of March 9, the date on which his "Salary Continuation Plan" benefits were exhausted. The defendant maintains that it had no knowledge of the plaintiff's compensation claim until March 12 when it received a copy from the Division of Workers' Compensation and that it discharged the plaintiff because he was physically unable to do the job. The plaintiff admits that he was unable to do the job on the date he was discharged.

We will first consider the plaintiff's contention that because the verdict director was proper and was supported by the evidence, contrary to the finding of the trial court, a new trial should not have been granted. The instruction read:

Your verdict must be for Plaintiff if you believe:

First, Plaintiff was employed by the defendant, and

Second, at the time Plaintiff was employed by the defendant, Plaintiff exercised his rights under the Workers' Compensation law of Missouri, and

Third, as a direct result of Plaintiff exercising his rights under the Workers' Compensation law of Missouri by filing a Workers' Compensation claim, defendant discharged Plaintiff, and

Fourth, as a direct result of such discharge, Plaintiff sustained damage.

Section 287.780, RSMo 1978, provides:

No employer or agent shall discharge or in any way discriminate against any employee for exercising any of his rights under this chapter. Any employee who has been discharged or discriminated against shall have a civil action for damages against his employer.

■■■ Four elements are necessary for a cause of action under the statute. They are: "(1) plaintiff's status as employee of defendant before injury, (2) plaintiff's exercise of a right granted by Chapter 287, (3) employer's discharge of or discrimination against plaintiff, and (4) an exclusive causal relationship between plaintiff's actions and defendant's actions." *Hansome v. Northwestern Cooperage Co.,* 679 S.W.2d 273, 275 (Mo. banc 1984). Because the plaintiff's verdict director contains all four elements, it complies with the requirement that a not-in-MAI instruction should follow the substantive law and be readily understandable. *Footwear Unlimited, Inc. v. Katzenberg,* 683 S.W.2d 291, 296 (Mo.App. 1984).

■ The omission of the phrase "by filing a Workers' Compensation claim" in the second paragraph of the verdict director is not prejudicial or confusing, despite the defendant's contention that it misled the jury, because the phrase is included appropriately in the third paragraph of the instruction. A jury instruction should be read as a whole and not just as isolated paragraphs or phrases. *Dorrin v. Union Electric Co.,* 581 S.W.2d 852, 860 (Mo.App. 1979).

■ The defendant also contends that the use of the plural "rights" followed by an enumeration of only one right misled the jury. A court should not require hypertechnical grammatical perfection but should be concerned with whether the jury can understand the intended meaning. *McDowell v. Southwestern Bell Telephone*

*Co.,* 546 S.W.2d 160, 171 (Mo.App.1976). The error in this instance did not affect the substance of the instruction. *Cf. Stahlheber v. American Cyanamid Co.,* 451 S.W.2d 48, 62 (Mo.1970) ("there" used incorrectly in place of "thereby").

The instructional errors of which the defendant complains do not justify a new trial. The instruction is not perfect; neither is it legally insufficient. On the retrial of this case, which remains necessary because of other errors in the trial, we expect that the technical problems with the instruction will be corrected.

▮ The defendant also charges that the instruction is so broad as to constitute a roving commission. Because the plaintiff's verdict director was specific as to which right he claimed was violated, the instruction avoids the roving commission problem that we were concerned with in *Henderson v. St. Louis Housing Authority,* 605 S.W.2d 800 (Mo.App.1979). The plaintiff's instruction specifically connected his discharge to the filing of his claim for compensation; therefore, there is no merit to the charge that the instruction was too broad.

▮ Because the plaintiff's verdict director is substantially correct, we will briefly consider the question of whether there was sufficient evidence to submit this case to the jury. The issue is controlled by *Hansome* which clearly established that on appeal, we should "consider the evidence in the light most favorable to plaintiff, give plaintiff the benefit of all inferences reasonably drawn from the evidence, and disregard defendant's evidence that does not support plaintiff's case." *Hansome,* 679 S.W.2d at 274. Because the plaintiff was discharged several days before the defendant received official notice from the Division of Workers' Compensation that a claim had been filed, the trial court determined that there was a vacuum of evidence to support the instruction which required a finding that the plaintiff was discharged for "exercising his rights under the Workers' Compensation law of Missouri by filing a Workers' Compensation claim." Nevertheless, there was sufficient evidence upon which the jury could find that the defendant was aware at the time of the discharge that the plaintiff had contacted an attorney in order to process a compensation claim. The trial court was concerned that the plaintiff had not shown that the defendant had been served with a formal claim for compensation before the termination, but this circumstance was not fatal to the plaintiff's case. It should be noted that in both *Hansome,* 679 S.W.2d at 277 (Blackmar, J., concurring), and *Reed v. Sale Memorial Hospital and Clinic,* 698 S.W.2d 931, 936 (Mo.App.1985), official notice that claims had been filed with the division had not been received by the employers prior to the discharge of the employee; nevertheless, neither court found the fact dispositive. The trial court in this case did not have the benefit of the *Reed* or *Hansome* decisions when it filed its memorandum opinion as both of those decisions were handed down after the trial of this case. Nonetheless, the *Reed* court announced that the *Hansome* decision must be given both retrospective and prospective application; consequently, it controls in this case. *Reed,* 698 S.W.2d at 934 (citing *State v. Walker,* 616 S.W.2d 48, 49 (Mo. banc 1981).

▮ The exclusive cause for the employee's discharge must be the exercise of a right under the Workers' Compensation Law. *Hansome,* 679 S.W.2d at 275. Proof of this causal connection is necessarily indirect because the employer is not likely to admit that retaliation is his motive. *Reed,* 698 S.W.2d at 935. The defendant claims that Mr. Wiedower was discharged because of his inability to perform the work physically necessary to his job while the plaintiff claims he was fired for filing a claim. Both of these theories were submitted to the jury by way of separate instructions.[1]

---

**1.** The defendant submitted a verdict director which read:

Your verdict must be for Defendant if you believe:

The jury believed the plaintiff. "[W]here the facts are in dispute as to whether the discharge was or was not wrongful, the question is always one for the jury under proper instructions." *Craig v. Thompson*, 244 S.W.2d 37, 41 (Mo. banc 1951).

The allocation of the burden of proof in cases involving the discharge of an employee for filing a claim alleging racial discrimination is helpful in the analysis of cases of this type. Once the plaintiff has produced sufficient evidence to show that the four elements in *Hansome* have been met, the burden shifts to the employer to rebut the plaintiff's evidence by showing that there was a legitimate reason for the discharge. Even though an employer produces evidence of a legitimate reason for the employee's discharge, the plaintiff who is able to persuade the jury that the employer's reason is pretextual and not causal is entitled to a verdict. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Robinson v. Monsanto Co.*, 758 F.2d 331, 336 (8th Cir.1985); *Barnes Hospital v. Missouri Commission on Human Rights*, 661 S.W.2d 534, 538 (Mo. banc 1983).

This case does not present the same fact situation as our decision in *Lohse v. St. Louis Children's Hospital*, 687 S.W.2d 594 (Mo.App.1985). The evidence in that case showed that the employee had frequent absences caused only in part by her work related injury over a period of more than two years. The employee admitted that she had been fired for excessive absenteeism and her claim for compensation was not filed for more than three weeks after her discharge. Although she also admitted that she was physically unable to do the work required of her when she was discharged because it required heavy lifting, this was but one factor in our decision to reverse the trial court's award of damages to the employee. The employer's conduct in the *Lohse* case was insufficient to support the charge of discrimination, but in this case the defendant's actions and the timing of the discharge were highly suspicious.

Next, we must consider the question of juror bias. After the selection of the jury and the presentation of opening statements, a juror asked to speak to the judge in chambers. She advised the court and the attorneys for both parties that during the evening recess, she had recalled that her half-brother had filed a workers' compensation claim in Illinois seven years earlier and that, as a result of her knowledge of his experience, she would be unable to give the defendant a fair trial. The defense made a motion for a mistrial to which the court responded:

> The record will show this lady, for whatever reason, and I don't know, for whatever reason doesn't want to serve on this jury. She didn't know about this. She didn't lie in voir dire examination. She told the truth and the record is made. A mistrial is overruled and we're going to proceed.

The issue is not, as plaintiff suggests, whether the concealment of the information was intentional or unintentional, but rather whether the juror's presence on the panel denied the defendant the right to twelve impartial jurors despite the unintentional concealment of information from the court.

The juror unequivocally stated before any evidence was presented in the case that she could not give the defendant a fair trial. A juror who states that she is not able to give a defendant a fair trial does not meet generally accepted standards to qualify as a juror. *State v. Roberts*, 604 S.W.2d 765, 767 (Mo.App.1980).

After the verdict, plaintiff's counsel requested that the court question the juror in chambers in order to make a record on the verdict in anticipation of an appeal. The request was granted over the defendant's objection. The juror replied to the court's questions concerning whether she was bi-

---

FIRST, PLAINTIFF was employed by the defendant, and

SECOND, Plaintiff was terminated from his employment by defendant because of Plaintiff's physical inability to discharge Plaintiff's duties as a Production Foreman.

ased or prejudiced against the defendant: "Seemingly not ... no." Nonetheless, the trial court granted a new trial based in part on the juror's statement that she could not give the defendant a fair trial.

If a person is biased or prejudiced for or against either party, she is not a competent juror. *Littell v. Bi-State Transit Development Agency,* 423 S.W.2d 34, 36 (Mo.App. 1967). Questions concerning the qualifications of a juror are questions of fact upon which the trial court is afforded wide discretion in passing on motions for a new trial. *Tate v. Giunta,* 413 S.W.2d 200, 202 (Mo.1967). "When a trial judge, in the exercise of his discretion, is convinced of his own error, and there legal ground in the record for such belief, he should grant a new trial." *Id.* at 203. When a juror's statements indicate that she can not give one party a fair trial, there is sufficient legal ground in the record for the trial court to believe error has occurred and to, therefore, sustain a motion for a new trial. We will be more liberal in upholding the trial court when a motion for a new trial is sustained than when it is denied. *Id.* at 202.

■ Plaintiff further suggests that because the verdict was unanimous, it was error to grant a new trial. The suggestion is totally without merit. "Parties in a civil case are always entitled to have a jury decision ... based on the honest deliberations of *twelve* qualified jurors." *Anderson v. Burlington Northern Railroad Co.,* 651 S.W.2d 176, 181 (Mo.App.1983) (emphasis added). The defendant is entitled to a new trial.

■ The plaintiff complains that the trial court erred in refusing to submit his claim for punitive damages to the jury and in granting the defendant's motion for a directed verdict as to the punitive damages issue. The court in *Reed* concluded that Section 287.780, RSMo 1978, "created a judicially cognizable independent tort" which may warrant punitive damages. *Reed,* 698 S.W.2d at 940. The evidence that supports the elements of this tort encompass the elements of knowledge and intent which are necessary to support the legal malice

required for punitive damages. *See generally, Central Microfilm Service Corp. v. Basic/Four Corp.,* 688 F.2d 1206, 1221 (8th Cir.1982), *cert. denied,* 459 U.S. 1204, 103 S.Ct. 1191, 75 L.Ed.2d 436 (1983) (punitive damages under Missouri law supported by evidence in fraudulent inducement action); *Crues v. KFC Corp.,* 729 F.2d 1145, 1153 (8th Cir.1984) (punitive damages under Missouri law supported by the elements of fraudulent misrepresentation action); *Ross v. Holton,* 640 S.W.2d 166, 173–74 (Mo.App. 1982) (evidence showing elements of intentional interference with contract also sufficient to show legal malice). The trial court erred in refusing to submit the punitive damages issue to the jury because there was sufficient evidence in this case for the jury to find either legal malice or actual malice on the part of the defendant. In addition, our courts have consistently upheld punitive damages in cases of retaliatory discharge. *See Hansome,* 679 S.W.2d at 276; *Reed,* 698 S.W.2d at 940; *Schmidt v. Central Hardware Co.,* 516 S.W.2d 556 (Mo.App.1974).

As a result of the juror bias, and the court's failure to submit the punitive damages issue to the jury, we affirm the decision of the trial court granting a new trial.

CRANDALL, P.J., and SATZ, J., concur.