**Frank C. BLAIR, Plaintiff–Appellant,**

v.

**STEADLEY COMPANY, Defendant–Respondent.**

**No. 15036.**

Missouri Court of Appeals, Southern District, Division One.

Oct. 7, 1987.

Motion for Rehearing or to Transfer to Supreme Court Denied Oct. 29, 1987.

Application to Transfer Denied Dec. 15, 1987.

**330**

L.R. Buehner, Buehner & Buehner, Joplin, for plaintiff-appellant.

Donald H. Loudon and E. John Edwards, II, Morris, Larson, King & Stamper, Kansas City, for defendant-respondent; Monte B. Cable, Spencer, Scott & Dwyer, P.C., Joplin, of counsel.

GREENE, Presiding Judge.

Frank Blair sued his former employer, the Steadley Company (Steadley), alleging that he was discharged from employment when, after he suffered an on-the-job injury, he exercised certain rights given him by the Workers' Compensation Act, § 287.780, RSMo 1978. The jury returned a verdict for Steadley. Blair appeals, claiming instructional error. We affirm.

Blair was a production worker for Steadley who manufactures bed products. On April 4, 1983, Blair injured his back while lifting a mattress, and was referred by the company to its physician, Dr. Cohle. On May 3, 1983, Blair saw an orthopedic surgeon, Dr. Esch, relative to his back injury. It was the opinion of Dr. Esch that Blair should not return to work until May 17, and gave Blair an excuse slip to that effect. On May 7, Blair took the excuse slip to the plant, and gave it to his supervisor. Dr. Cohle's opinion on when Blair could return to work differed from that of Dr. Esch, as Cohle thought Blair could return to work on May 9.

On May 9, Blair went to the plant and found that an employee who was his junior in plant seniority had been given a day shift job that Blair wanted. Blair protested to company officials, claiming that his contract seniority rights were being violated. He was told that this had happened because the only release Steadley had received from Blair was the one from Dr. Esch for a release date of May 17. Blair then produced the release given him by Dr. Cohle which released him to return to work on May 9. Blair was told by Steadley that he could return to work on the basis of the release of Dr. Cohle, but that he would not be charged with any unexcused absences if he did not return to work until May 17, which was the release day named by Dr. Esch. Blair then said he would return to work the following day, May 10.

However, after consulting a lawyer and filing a worker's compensation claim, Blair decided not to return to work on May 10. His absence was noted by the company as "unexcused." When Blair failed to report for work on May 11 or 12, his employment with Steadley was terminated. After grievance procedures were decided adversely to Blair, he sued Steadley for wrongful discharge alleging that his discharge was in violation of § 287.780, RSMo 1978, which provides that no employer shall discharge or discriminate against an employee for exercising any of his rights under the Workers' Compensation Act. Blair contended he was fired because he had consulted an attorney, filed a claim, and exercised his right not to work during a

period of temporary total disability that was caused by his injuries.

At trial, it was Steadley's position and evidence was introduced to that effect, that Blair was discharged because he had received two previous notices of excessive absences in March of 1983, which combined with his unexcused absence of May 10, 1983, justified dismissal under company rules. At the conclusion of the evidence, the trial court gave the jury, among others, instructions No. 6 and 7, which read as follows:

### INSTRUCTION NO. 6

Your verdict must be for the plaintiff if you believe:

First, that plaintiff, while employed by the defendant, exercised certain of his rights under the Worker's Compensation Law by consulting a lawyer in regard to his rights and filing a Claim For Compensation, and

Second, as a direct and exclusive result of plaintiff exercising said rights, or either of them, under the Worker's Compensation Law, defendant discharged plaintiff, and

Third, as a direct result of such discharge plaintiff sustained damage.

### INSTRUCTION NO. 7

Your verdict must be for defendant unless you believe that plaintiff was discharged as a direct and exclusive result of either plaintiff's filing of a claim under the Worker's Compensation Law of Missouri or of plaintiff's consulting a lawyer in regard to his rights under the Worker's Compensation Law of Missouri.

Instruction No. 6 was prepared and offered by the trial court, after it refused Blair's proferred verdict director which did not contain the word "exclusive." Instruction No. 7 was offered by Steadley. The jury returned a verdict for the company.

On appeal, Blair contends the trial court erred in giving instructions 6 and 7, finding fault with the "exclusive result" portion of those instructions. Blair argues that the clear intent of § 287.780 is that an employer may not use the exercise of Workers'

Compensation Law rights as even part of the reason for discharge, even though there are other reasons for discharge upon which the employer may have relied, and also that there was no evidentiary support of any reason for his discharge other than the exercise of his workers' compensation rights.

■ There is no merit to the second phase of the argument, as it ignores the facts in evidence. There was substantial evidence that Blair had insisted on returning to work on May 10, relying on Dr. Cohle's release, and that when faced with Blair's demand under his contract seniority rights, the company accommodated him and scheduled him to work on May 10. Blair not only failed to report for work as promised, he failed to notify the company that he would not be there. This constituted an unexcused absence, which coupled with Blair's prior excessive absences in March made it a jury question as to whether Blair was unlawfully discharged.

■ The only real question here is whether the use of the word "exclusive" in instructions 6 and 7 was unduly restrictive. In our opinion, the resolution of the question is controlled by the holding of *Hansome v. Northwestern Cooperage Co.*, 679 S.W.2d 273 (Mo. banc 1984). *Hansome* is a wrongful discharge case that was filed as a result of Hansome claiming he was fired after exercising the rights granted him by the Workers' Compensation Act. In determining whether plaintiff made a submissible case, the Supreme Court said, "The action authorized by this statute (§ 287.780) has four elements: (1) plaintiff's status as employee of defendant before injury, (2) plaintiff's exercise of a right granted by Chapter 287, (3) employer's discharge of or discrimination against plaintiff, and (4) an exclusive causal relationship between plaintiff's actions and defendant's actions." Id. at 275.

After observing that the first three elements were not challenged, the Supreme Court reviewed the record to determine if the causal relationship was demonstrated

at trial. In a footnote to the four element test, the Supreme Court said:

> Although the fourth element is often labeled discrimination, it is more accurate to use the shorthand *causality*. Missouri still adheres to the 'at will' doctrine which allows an employer to fire an employee, without a durational contract, for any reason or for no reason. *Amaan v. City of Eureka*, 615 S.W.2d 414 (Mo. banc 1981), cert. denied, 454 U.S. 1084, 102 S.Ct. 642, 70 L.Ed.2d 619 (1981). The Worker's Compensation Act provides a limited exception to the 'at will' doctrine. Absent a statutorily prohibited reason for discharge, in this case an exclusive causal relationship between the discharge and employee's exercise of rights granted by Chapter 287, RSMo 1978, employer is free to fire any employee at will. Missouri appellate courts have explored the causality element. It was missing in *Mitchell v. St. Louis County*, 575 S.W.2d 813 (Mo.App.1978). Plaintiff was discharged several months after filing for compensation. After her injury she missed many hours of work, both related and unrelated to the injury. She was fired for excessive absenteeism. Defendant's motion for directed verdict was sustained and affirmed. An employer may fire an employee for excessive absenteeism, even if the absenteeism is caused by a compensable injury. Causality does not exist if the basis for discharge is valid and nonpretextual. *Rodriguez v. Civil Service Commission*, 582 S.W.2d 354, 355 (Mo.App.1979). Rodriguez was discharged because she was 'unwilling or unable to work.' Id. Holding for defendant, the court explained that the Compensation Act, specifically § 287.190, RSMo 1978, does not guarantee employee will be able to return to her old job. A directed verdict for defendant was sustained in *Davis v. Richmond Special Road District*, 649 S.W.2d 252 (Mo.App.1983). After suffering a compensable injury, Davis returned to work on a trial basis, but he was fired for being unable to perform his job.

Id. at 275 n. 2. After review, the Supreme Court concluded Hansome made a submissible case.

In a dissent, Donnelly, J., who believed Hansome had not made a submissible case, had this to say:

> As the principal opinion indicates, recovery is authorized under § 287.780, RSMo 1978, only if an exclusive causal relationship is demonstrated between plaintiff's actions and defendant's actions. This means that if the evidence demonstrates that the employer had cause for terminating the employment other than for the employee's exercise of his rights under the Workers' Compensation Law, the employee cannot recover. *Arie v. Intertherm, Inc.*, 648 S.W.2d 142, 149 (Mo.App.1983). The reason for this is that Workers' Compensation Laws are intended only to compensate employees for job-related injuries; they are not intended to insure job security. *Davis v. Richmond Special Road Dist.*, 649 S.W. 2d 252, 255–56 (Mo.App.1983); *Rodriguez v. Civil Service Commission*, 582 S.W.2d 354, 356 (Mo.App.1979).

Id. at 277.

■ Recognizing the impact of the language of *Hansome* on his position here, Blair argues that *Hansome* is not controlling and binding on this court because the pronouncement by the Supreme Court in that case that an *exclusive* causal relationship between plaintiff's actions and defendant's actions must be proved in order to make a submissible case is dictum. We do not regard it as such.

The four element test announced in *Hansome* is a declaration of substantive law which, as a court of last resort in cases of this kind, the Supreme Court is entitled to declare. The test has been treated as substantive law by the courts of appeal in later cases. In *Reed v. Sale Memorial Hosp. and Clinic*, 698 S.W.2d 931 (Mo.App.1985), the court stated that the elements of a plaintiff's cause of action under § 287.780 given in *Hansome* establishes "a new substantive rule of law." Id. at 934. The court of appeals also applied the rules of *Hansome* in *Wiedower v. ACF Industries*,

*Inc.,* 715 S.W.2d 303 (Mo.App.1986), where the court specifically stated, citing *Hansome,* that the "exclusive cause for the employer's discharge must be the exercise of a right under the Workers' Compensation Law."

Based on a close analysis of *Hansome,* and its application in *Reed* and *Wiedower,* there is no doubt but that the declaration of the exclusive causal relationship test in *Hansome* was a declaration of substantive law, and since it was relevant to the determination of the case, could not be dictum as claimed by Blair.

■ There is no MAI instruction defining what the essential elements are in cases such as this. When this is so, not-in MAI instructions must follow the substantive law and be readily understandable. *Bayne v. Jenkins,* 593 S.W.2d 519, 530 (Mo. banc 1980). Instructions No. 6 and 7 meet that test. The point has no merit.

Judgment affirmed.

CROW, C.J., and HOLSTEIN, J., concur.