JUSTICE RICE,
concurring in part and dissenting in part.
¶39 I concur with the Court’s conclusion that summary judgment was properly entered against Ostermiller, as well as its conclusion that § 39-71-413, MCA, is constitutional. However, I dissent from the Court’s conclusion that Alexander has asserted facts necessary to evade the rule of exclusivity.
¶40 The Legislature has declared that “an objective of the Montana workers’ compensation system [is to] provide, without regard to fault, wage supplement and medical benefits to a worker suffering from a work-related injury or disease.” Section 39-71-105(1), MCA. Pursuant thereto, the Legislature has provided that “[flor all employments covered under the Workers’ Compensation Act or for which an election has been made for coverage under this chapter, the provisions of this chapter are exclusive.” Section 39-71-411, MCA (emphasis added); see *454 also Larson’s Workers’ Compensation Law § 103.03 (Rev. ed., Matthew Bender Supp. 2009) (stating the two reasons for exclusivity are “to maintain the balance of sacrifices between employer and employee in the substitution of no-fault liability for tort liability” and “to minimize litigation, even litigation of undoubted merit”).
¶41 Only in very limited circumstances may an injured employee avoid the exclusivity rule and pursue a lawsuit in addition to collecting benefits under the Workers’ Compensation Act:
If an employee is intentionally injured by an intentional and deliberate act of the employee’s employer or by the intentional and deliberate act of a fellow employee while performing the duties of employment, the employee or in the case of death the employee’s heirs or personal representatives, in addition to the right to receive compensation under the Workers’ Compensation Act, have a cause of action for damages against the person whose intentional and deliberate act caused the intentional injury.
Section 39-71-413(1), MCA. The statute defines “intentional injury” as “an injury caused by an intentional and deliberate act that is specifically and actually intended to cause injury to the employee injured and there is actual knowledge that an injury is certain to occur.” Section 39-71-413(3), MCA (emphasis added). This statutory scheme admittedly sets a very high bar for evading the exclusivity rule and maintaining an action against a covered employer, but such a bar was the deliberate and calculated action of the Legislature. Wise v. CNH Am., LLC, 2006 MT 194, ¶¶ 9-11, 333 Mont. 181, 142 P.3d 774. Further, the bar is consistent with the common understanding of workers’ compensation exclusivity among the states, and this Court’s precedent.
¶42 Larson’s Workers’ Compensation Law illustrates the level of intention necessary for an injury to be taken outside of workers’ compensation exclusivity. Notably, an employer’s alleged conduct which “goes beyond aggravated negligence” and includes “knowingly permitting a hazardous work condition to exist,” “wilfully failing to furnish a safe place to work,” or “withholding information about worksite hazards” is not sufficient. Larson’s Workers’ Compensation Law § 103.03. Thus, the “toleration of a dangerous condition may or may not set the stage for an accidental injury later. But in any normal use of the words, it cannot be said, if such an injury does happen, that this was deliberate infliction of harm comparable to an intentional left jab to the chin.” Larson’s Workers’ Compensation Law § 103.03. This is not mere commentary — Larsora explains that Montana is “firmly *455 within the camp” subscribing to these principles. Larson’s Workers’ Compensation Law § 103.04[3][c][1].
¶43 This Court has already held, in a similar case, that the intention necessary to evade exclusivity did not exist as a matter of law when an employer knew of previous injuries caused by an unsafe work environment and, despite such knowledge, directed the employee to work in the environment without informing him of such a danger. Noonan v. Spring Creek Forest Prods., Inc., 216 Mont. 221, 224-25, 700 P.2d 623, 625 (1985).[2] Noonan reached into a wood planer to free a jammed piece of wood when the planer entrapped his hand, sustaining serious injuries. Noonan, 216 Mont. at 222, 700 P.2d at 624. Noonan brought a suit against his employer, Spring Creek, claiming that Spring Creek “had been requested to repair the planer but failed to do so” and that it “knew of prior accidents on the planer but concealed the fact of such accidents from Randy Noonan.” Noonan, 216 Mont. at 223, 700 P.2d at 624.
¶44 On appeal, Noonan offered cases for the proposition that “[t]he existence of this knowledge or intent may be inferred from the employer’s conduct and surrounding circumstances.” Noonan, 216 Mont. at 224, 700 P.2d at 625. However, we rejected that approach, concluding:
The facts do establish that the owners of Spring Creek operated a hazardous and dangerous workplace. The number of injuries that occurred among a relatively small number of workers provides ample support for this observation. However, to translate this situation into an inference of tortious intent on behalf of the employer would require a standard of law that this Court has thus far refused to adopt.
Noonan, 216 Mont. at 225, 700 P.2d at 625. In a special concurrence, Justice Morrison offered an explanation which is directly contradictory *456 to the Court’s approach today:
There is sufficient evidence in this record to allow a factual determination if we apply a “willful” standard. The conscious disregard of others is the type of conduct that rises to the level of willfulness and were we to adopt such a standard for Workers’ Compensation purposes this case should be permitted to go to a jury for resolution of the liability and damage questions.
I believe the legislature intended Workers’ Compensation to be the exclusive remedy except in those situations where the defendant’s conduct arose from specific intent rather than willfulness. In other words, an assault would allow a personal injury action. Gross negligence, such as we have here, would not.
Were we to open the door for personal injury actions where the defendant’s conduct rises to a level of gross negligence or willfulness, I can foresee personal injury actions in many Workers’ Compensation cases. Although there may be a basis in sound public policy for allowing this, I do not believe that is what the legislature intended.
Noonan, 216 Mont at 226, 700 P.2d at 626 (Morrison, J., concurring) (emphasis added). I agree with both Justice Morrison’s legal analysis and his concern about the future effect of a contrary decision.
¶45 Ostermiller and Alexander indicate that they presented the following factual assertions to the District Court, as quoted from their briefing:
(1) CO was present at the satellite office[;] (2) Propane was present in the satellite office; (3) Mike Alexander and Burt Ostermiller were breathing both chemicals during the time they were in the satellite office; (4) Mike Alexander and Burt Ostermiller suffered injuries as a proximate result of their exposure to the gas(es); (5) [Bozeman Motors] knew or should have known of the presence of gas(es) originating from the stove, and (6) [Bozeman Motors] did nothing to avoid causing the expected and anticipated harm to [Burt] Ostermiller and Mike Alexander.
Ostermiller and Alexander then delineate sixteen facts which they allege that Bozeman Motors knew about the work environment:
1. The size of the satellite office; 2. That the stove was too big for the office; 3. That the stove was the primary, or rather, only, source of heat for the small building; 4. That the office was unventilated; 5. That the stove was fouling the air; 6. That Ostermiller was getting sick from breathing the air at the office;
*457 7. The specific symptoms that Ostermiller was experiencing; 8. That Oste[r]miller claimed the symptoms were a result of breathing the air in the office; 9. That they had conducted no inquiry or investigation into the source of the bad air or whether the stove was functioning properly or other alternative causes for Ostermiller’s symptoms; 10. That the weather was such that Ostermiller had to remain inside the office throughout most of the day; 11. That Ostermiller had passed out and become so ill that he could not return to work; 12. That Mike Alexander was working in the same office during a colder time of year with the exact same stove operating just as it had previously; 13. That Mike Alexander was breathing the air in the office; 14. That no warning had been provided to Mike Alexander; 15. That Mike Alexander, who was known not to complain about anything, was complaining of the same odor and the same symptoms experienced by Ostermiller; 16. That Mike Alexander was also overcome and was physically unable to return to work.
Accepting all of these allegations as true for purposes of summary judgment, Alexander still does not allege facts demonstrating “an intentional and deliberate act that is specifically and actually intended to cause injury to the employee.” Section 39-71-413(3), MCA. At most, this alleged conduct establishes aggravated negligence in failing to provide a safe working environment, and although reprehensible, the Legislature has deemed such conduct insufficient to remove this case from the exclusivity provision of the Workers’ Compensation Act. See § 39-71-413(3), MCA; Wise, ¶ 12. Only cases involving intentional and deliberate acts specifically intended to cause the injury to the injured employee are permitted under the exception to exclusivity. See Taylor, 785 So. 2d at 861, 864 (employee stabbed by fellow employee).
¶46 Therefore, I would affirm the District Court’s grant of summary judgment with regard to Alexander.

A small sampling of other decisions from the “camp” include: Russell v. United Parcel Serv., Inc., 666 F.2d 1188 (8th Cir. 1981); Rolon v. Ortho Biologies LLC, 404 F. Supp. 2d 409 (D.P.R. 2005); Frye v. Airco, Inc., 269 F. Supp. 2d 743 (S.D. Miss. 2003); Loughridge v. Overnite Transp. Co., 649 F. Supp. 52 (E.D. Mo. 1986);Provo v. Bunker Hill Co., 393 F. Supp. 778 (D. Idaho 1975); Conway v. Circus Circus Casinos, Inc., 8 P.3d 837 (Nev. 2000) (per curiam); Angle v. Alexander, 945 S.W.2d 933 (Ark. 1997); White v. Apollo-Lakewood, Inc., 720 S.W.2d 702 (Ark. 1986); Grillo v. Natl. Bank of Wash., 540 A.2d 743 (D.C. App. 1988);Hildebrandt v. Whirlpool Corp., 364 N.W.2d 394 (Minn. 1985); Blailock v. O’Bannon, 795 So. 2d 533 (Miss. 2001); Cf. Taylor v. Transocean Terminal Operators, Inc., 785 So. 2d 860 (La. App. 4th Cir. 2001).

 Although this Court decided Noonan prior to the 2001 amendments to § 39-71-413, MCA, the analysis of intent remains instructive. See Opinion, ¶ 30 n.7.