Gerald LYNCH, Plaintiff/Appellant,

v.

BLANKE BAER & BOWEY KRIMKO,
INC., Defendant/Respondent.

No. 65784.

Missouri Court of Appeals,
Eastern District,
Division Four.

April 11, 1995.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 31, 1995.

Application to Transfer Denied
July 25, 1995.

148

Daniel J. McMichael, McMichael & Logan, Chesterfield, for appellant.

Kevin J. Lorenz, James N. Foster, Jr., Michelle M. Cain, McMahon, Berger, Hanna, Linihan, Cody & McCarthy, St. Louis, for respondent.

AHRENS, Presiding Judge.

In this jury-tried case for wrongful discharge, plaintiff Gerald Lynch appeals the judgment which granted a directed verdict in favor of defendant Blanke Baer and Bowey Krimko, Inc. The judgment is reversed and the cause remanded for a new trial.

Plaintiff originally filed this action in St. Louis City against corporate defendant Blanke Baer and individual defendant Joseph Bryant (president of Blanke Baer). The case against defendant Bryant was dismissed for failure to state a claim and the cause was transferred to St. Louis County. During trial, at the close of all evidence, defendant's motion for a directed verdict was denied. The jury was unable to reach a verdict and the trial court declared a mistrial. The defendant moved for judgment in accordance with its motion for a directed verdict and the trial court sustained that motion.

In his first point on appeal, plaintiff contends that the trial court erred in directing a verdict in favor of defendant because plaintiff made a submissible case for wrongful discharge in violation of public policy for reporting federal violations to his superiors. To review the grant of a directed verdict in favor of a defendant, we view the evidence and permissible inferences most favorably to the plaintiff, disregard contrary evidence and inferences and determine whether, on the evidence so viewed, the plaintiff made a submissible case. *Heacox v. Robbins Educ. Tours, Inc.*, 829 S.W.2d 600, 601 (Mo.App. 1992).

Plaintiff began his employment at Blanke Baer in November of 1985 as technical director. One aspect of plaintiff's job included maintaining quality assurance of employer's products by enforcing 21 C.F.R. § 113.3 et seq., the Food and Drug Administration's (FDA) regulation on water activity in food products.[1] Plaintiff became aware of product violations early in his career. Evidence showed that during this time various products were not within the required thresholds for water activity. When plaintiff inquired of his staff in 1986 as to what efforts they were making with regard to water activity levels, the staff replied that they were working on it and that it was not a major problem. At the end of 1987, plaintiff renewed a product development project initiated by another employee at Blanke Baer before plaintiff began employment. The project's objective was to develop formulas for a group of products with particular water activity and pH levels (a process called reformulation). Plaintiff stated that he made the project a top priority.

Plaintiff testified that in mid–1987 he began raising the issue of the water activity level in Blanke Baer products at every executive committee meeting.[2] He ordered more measurements of water activity. He believed that his staff was dissatisfied with his demands for making reformulation a priority. Plaintiff suggested refrigeration of products to the executive committee as a solution to the problem. The committee expressed opinions that refrigeration would be impractical and that it might make it more difficult to sell the products. Plaintiff also urged that the products be registered with the FDA, with the effect of frequent checks by the FDA. In response to the suggestion of product registration, Joseph Bryant, plaintiff's supervisor, said that "he didn't want us to contact the FDA, in effect." Bryant explained registration would complicate the process and the FDA may question other products.

Plaintiff distributed various memoranda in early 1988 regarding high water activity levels and attempted to set up a meeting on the problem. On March 29, 1988, plaintiff distributed a memorandum which set up a meeting for the next day, which stated:

> The purpose of this meeting is to develop an action plan that will resolve the serious problems concerning the manufacture of products that have high water activity and low acidity.
>
> I protest that we have three options *and* we *cannot* continue operating and ignoring the risk to the public, to our company, and to our personal reputations and careers. For clarity, simplicity, and ease of *recall* (memory, not product) I choose to designate these as the three R's ...
>
> 1. Reformulate
> 2. Refrigerate, and/or
> 3. Register (The process with federal authorities with all the data required to secure approval.)
>
> \* \* \* \* \* \*
>
> I now want to make my position on this issue (products with high water activity and low acidity) perfectly clear—we must

---

1. In layman's terms, water activity is an indirect measurement of the ability of a material to pull in and hold water. Both the water activity and acidity level (pH) affect the growth of microorganisms in a product. Title 21 of the C.F.R., specifically section 113, requires certain thresholds that products must meet with reference to water activity and pH.

2. The executive committee consisted of the production manager, the sales and marketing manager, the technical director (plaintiff), the customer service manager, and the president of the company (Joseph Bryant).

come out of this meeting with an action plan that involves the above described three R's in a combination that reflects our concern <u>primarily</u> for the safety of the public, but also for the viability of our business, and lends credibility under close scrutiny, to our reputations as professional managers and good citizens. (Underline in original.)

Plaintiff testified that when Bryant received this memo, he called plaintiff into his office, stating "Jerry, we have to talk about this memo and restrict the circulation," and slammed the door. Bryant said that "the memo was too abrasive and we feel things are not working out. And I know that you had made plans to attend Purdue University to be certified for a course where you would be in contact with FDA people and so forth, and I don't want you to be in contact with anybody from the FDA at this point." At that point, Bryant fired plaintiff but told him not to reveal it "for a short period of time."

One witness for plaintiff, William Baugher, was the vice-president and technical director for the parent company of Blanke Baer, Universal Flavors Corporation. Baugher testified that plaintiff sent him memoranda on a regular basis updating him on the products with high water activity levels. When the witness discussed plaintiff's situation with Bryant, Bryant explained that plaintiff "was getting into things which really he shouldn't be into. 'If he will get off this damn water activity kick and get back on the bench and make products, we would all be a lot better off.'"

Plaintiff also testified that although he never received a written annual performance review, he received raises and bonuses in 1986 and 1987, with a stock option offered in 1987. Plaintiff's bonus for 1987 was higher than anyone's at Blanke Baer except for Bryant.

■ In the present case, for plaintiff to make a submissible case, he must establish by substantial evidence the elements of the cause of action for wrongful discharge under the public policy exception to the employment at-will doctrine. That doctrine states that "an employer can discharge—for cause or without cause—an at-will employee ...

and still not be subject to liability for wrongful discharge." *Luethans v. Washington Univ.*, 838 S.W.2d 117, 119 (Mo.App.1992), (quoting *Johnson v. McDonnell Douglas Corp.*, 745 S.W.2d 661, 662 (Mo. banc 1988)). However, a narrow, public policy exception has been carved out for wrongful discharge for an at-will employee when an employer's act of discharging the employee is violative of a statute, regulation based on a statute, or a constitutional provision. *Luethans*, 838 S.W.2d at 120.

■ The case of *Boyle v. Vista Eyewear, Inc.*, 700 S.W.2d 859 (Mo.App.1985) outlined the four categories of the public policy exception cases: (1) discharge of an employee because of his or her refusal to perform an illegal act; (2) discharge because an employee reported violations of law or public policy to superiors or public authorities; (3) discharge because an employee participated in acts that public policy would encourage, such as jury duty, seeking public office, asserting a right to collective bargaining, or joining a union; and (4) discharge because an employee filed a worker's compensation claim. *Id.* at 873–75.

■ The claim in the case before us involves the second public policy exception category. To prevail on a claim of wrongful discharge, the plaintiff must prove that the employer discharged the plaintiff because plaintiff "reported to superiors or to public authorities serious misconduct that constitutes a violation of the law and of ... well established and clearly mandated public policy." *Loomstein v. Medicare Pharmacies, Inc.*, 750 S.W.2d 106, 112 (Mo.App.1988) (citing *Boyle*, 700 S.W.2d at 878). To meet his burden, plaintiff here must present evidence to establish an exclusive *causal connection* between his discharge and reporting violations to either his superiors or to public authorities. *See Loomstein*, 750 S.W.2d at 112–13.

■ Defendant claims that plaintiff's evidence does not fit within the narrow public policy exception to the at-will employment doctrine because plaintiff did not report or threaten to report his concerns to any out-

side agency or to the FDA. However, plaintiff's evidence, viewed in a light favorable to plaintiff, satisfies the requirement of the public policy exception that plaintiff reported violations to his superiors. *Boyle,* 700 S.W.2d at 878.

Defendant also contends plaintiff did not prove an exclusive causal connection between his discharge and his activities. Defendant cites Bryant's testimony adduced in plaintiff's case and defendant's evidence that other factors, such as plaintiff's poor performance, his lack of technical knowledge and his inability to supervise effectively, played a role in the decision to terminate him. However, under our standard of review as previously noted, we must view the evidence and permissible inferences therefrom most favorably to the plaintiff, and disregard contrary evidence and inferences. *Heacox,* 829 S.W.2d at 601. Viewed under this standard, plaintiff made a submissible case. His theory, supported by competent evidence, is that he was fired for reporting to his superiors, (the executive committee in general and Bryant in particular) violations of the FDA's regulations as found in 21 C.F.R. § 113.3 et seq. Plaintiff's evidence demonstrated that he was fired when he demanded action to correct the violations and was told not to contact the FDA regarding the violations. Plaintiff's first point is granted.

Next, plaintiff asserts that the trial court erred in giving Instruction No. 6 to the jury as not conforming to substantive law for wrongful discharge cases. Plaintiff specifically argues that Missouri law does not require that a plaintiff in a wrongful discharge case prove that his demands that the defendant comply with federal regulations was the exclusive reason for his discharge. Plaintiff concedes that he must show a "direct" causal connection, but not that it was "exclusive". Instruction No. 6 read as follows:

Your verdict must be for the Plaintiff if you believe:

First, that Plaintiff, while employed by the Defendant, demanded that Defendant comply with certain regulations of the Food and Drug Administration regarding water activity; and

Second, as a direct and exclusive result of Plaintiff's demands, Defendant discharged Plaintiff.

■ The verdict directing instruction was a not-in-M.A.I. instruction. When using a not-in-M.A.I. instruction, the instruction used must follow the substantive law and be understandable. *Clark v. Beverly Enterprises–Missouri, Inc.,* 872 S.W.2d 522, 526 (Mo.App. 1994).

■ Plaintiff maintains that the instruction is erroneous because the substantive law regarding wrongful discharge under the public policy exception only requires "a causal connection" between plaintiff's actions and his discharge by defendant, citing *Loomstein,* 750 S.W.2d at 112. In *Loomstein,* the plaintiff, a pharmacist and pharmacy manager, brought an action for wrongful discharge and breach of contract against his employer. In that case, the plaintiff presented three incidents in which his employer, Medicare, allegedly demanded that he violate the law, and fired him because of his refusal to do so. This court stated, in pertinent part:

In order to prevail on his claim for retaliatory discharge, Loomstein must prove that Medicare discharged him because he refused to violate the law or any well established and clear mandate of public policy ... In other words, Loomstein must present evidence to establish a causal connection between his discharge and his alleged refusal to violate the law. (Citation omitted.) *Id.*

When considering the evidence of the first incident to determine if Loomstein had made a submissible case, we stated that it "still [left] unresolved the question whether Loomstein was ultimately fired *exclusively* because of that incident. It is also reasonable for one to conclude that other intervening events precipitated Loomstein's discharge." *Id.* at 113 (emphasis added).

Plaintiff urges that this comment that the incident "did not prove an 'exclusive' causal connection was a simple overstatement of the evidence's insufficiency and was not intended to state the standard of submissability [sic]." We disagree. In *Boyle,* the court decided that a public policy exception to the employ-

ment at-will doctrine was available, but that exception is a narrow one. *Boyle*, 700 S.W.2d at 871. A cause of action for wrongful discharge may be maintained "where an employer has discharged an at-will employee *because* that employee refused to violate the law or ... public policy ..., or reported to his superiors or to public authorities" violations of the law or public policy. *Id.* at 878 (emphasis added). For a plaintiff to meet his or her prima facie burden for wrongful discharge under the public policy exception, the plaintiff must establish an exclusive causal relationship between the discharge and the allegation of violation of public policy. *Clark*, 872 S.W.2d at 524–27; *see Hansome v. Northwestern Cooperage Co.*, 679 S.W.2d 273, 275 (Mo. banc 1984). We conclude that the instruction follows the substantive law for wrongful discharge cases under the public policy exception. Point denied.

We note, however, that while the plaintiff must establish an exclusive causal connection, an employer may claim a legitimate reason for the discharge. In another public policy exception category, the workers' compensation cases, the exclusive cause for the employee's discharge must be the exercise of a right under the worker's compensation law. *Hansome*, 679 S.W.2d at 275. In some of those cases, the employer offered nonretaliatory reasons for the employee's discharge. For example, in *Wiedower v. ACF Indus., Inc.*, 715 S.W.2d 303 (Mo.App.1986), the plaintiff-employee alleged that his discharge was because of filing a worker's compensation claim, and the employer claimed that employee was discharged because of his inability to perform the work physically necessary to his job. *Id.* at 306. Both of those theories were submitted to the jury with separate instructions. *Id.* "[W]here the facts are in dispute as to whether the discharge was or was not wrongful, the question is always one for the jury under proper instructions." *Id.* at 307 (quoting *Craig v. Thompson*, 244 S.W.2d 37, 41 (Mo. banc 1951)).

■ In *Wiedower*, this court recommended the burden shifting analysis of racial discrimination cases for public policy exception cases where the employer claims a non-retaliatory reason for the discharge. Once the plaintiff produces sufficient evidence to establish a prima facie case under the public policy exception, "the burden shifts to the employer to rebut the plaintiff's evidence by showing that there was a legitimate reason for the discharge. Even though an employer produces evidence of a legitimate reason for the employee's discharge, the plaintiff who is able to persuade the jury that the employer's reason is pretextual and not causal is entitled to a verdict." *Wiedower*, 715 S.W.2d at 307 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Robinson v. Monsanto Co.*, 758 F.2d 331, 336 (8th Cir.1985); *Barnes Hosp. v. Missouri Comm'n on Human Rights*, 661 S.W.2d 534, 538 (Mo. banc 1983)). *See also Schweiss v. Chrysler Motors Corp.*, 782 F.Supp. 88, 90 (E.D.Mo.1992).

In plaintiff's next point, he contends that the trial court in St. Louis City erred in dismissing the individual defendant Bryant and ordering venue transferred to St. Louis County. Plaintiff argues that defendant Bryant was a proper party defendant whose joinder was not pretensive, and hence, venue was proper in St. Louis City under the general venue statute § 508.010 RSMo 1994.[3] We disagree.

The cause of action was originally filed in St. Louis City naming individual defendant Bryant and corporate defendant Blanke Baer. Defendants filed a motion to dismiss defendant Bryant and to transfer for improper venue. Defendants asserted that plaintiff's petition failed to state a cause of action against Bryant because he acted within the scope of his employment with Blanke Baer, and as a matter of law, was immune from liability. Defendants argued that if dismissal of Bryant is proper, then the action should be transferred to St. Louis County pursuant to the venue statute proper for actions against corporations, § 508.040 RSMo 1994.

---

**3.** Section 508.010(2) states: "When there are several defendants, and they reside in different counties, the suit may be brought in any such county." "The county of residence for a business corporation for purposes of [subparagraph (2)] is the county where its registered office and agent is maintained." *State ex rel. Rothermich v. Gallagher*, 816 S.W.2d 194, 198 (Mo.1991).

Subsequently, the trial court dismissed defendant Bryant and transferred the case to St. Louis County where the cause of action accrued and where defendant Blanke Baer conducts its customary business.

 If venue was properly vested in the first instance, the subsequent dismissal of the resident defendant does not divest the court of venue. *State ex rel. Kyger v. Koehr,* 831 S.W.2d 953, 955 (Mo.App.1992). If a plaintiff pretensively joins a defendant to gain venue, then venue is improper and the cause must be transferred. *Id.*

 We first address the question of what is the standard for determining whether joinder of a defendant is pretensive. Our Missouri Supreme Court recently rearticulated the test in *State ex rel. Malone Cornelius v. Mummert,* 889 S.W.2d 822 (Mo. banc 1994). The Court stated that courts will not permit plaintiffs to engage in the pretense of joining defendants for the sole purpose of obtaining venue, with the party claiming pretensive joinder bearing the burdens of persuasion and proof. *Id.* at 824. Pretensive joinder exists where joinder appears pretensive on the face of the pleadings and where no cause of action exists against the joined defendant. *Id.* (*citing State ex rel. Coca Cola v. Gaertner,* 681 S.W.2d 445, 447 (Mo. 1984), *overruled on other grounds* by *DePaul Health Center v. Mummert,* 870 S.W.2d 820, 822 (Mo. banc 1994)). After reviewing the current state of the law regarding pretensive joinder, the Court held "that the appropriate standard asks whether, after reasonable inquiry of the law under the circumstances, plaintiffs have put forward a claim either under existing law, under a non-frivolous argument for the extension, modification or reversal of existing law, or under a non-frivolous argument for the establishment of new law." *Cornelius,* at 825. In the present case, plaintiff contends that his petition asserts a valid claim against defendant Bryant under the existing law.

 There are two potential grounds for attacking joinder as pretensive: the party can claim that (1) the facts pleaded in the petition are not true; or (2) even if the facts are true, they do not support a claim under the substantive law. *Id.* at 825. In the present case, defendants asserted in their motion to dismiss that, as a matter of law, plaintiff's petition did not state a cause of action against individual defendant Bryant.

 Under Missouri law, merely holding a corporate office will not subject one to personal liability for the misdeeds of the corporation. *Boyd v. Wimes,* 664 S.W.2d 596, 598 (Mo.App.1984). In an action for inducing a breach of contract, a corporate officer is privileged provided no improper means are used, the defendant acts in good faith to protect the corporation and does not act for his own benefit. *Nola v. Merollis Chevrolet Kansas City, Inc.,* 537 S.W.2d 627, 634 (Mo.App.1976); *Paglin v. Saztec Int'l., Inc.,* 834 F.Supp. 1184, 1197 (W.D.Mo.1993). However, corporate officers may be held individually liable for *tortious corporate conduct* if they have actual or constructive knowledge of, and participated in, an actionable wrong. *Paglin,* 834 F.Supp. at 1197, citing *Boyd,* 664 S.W.2d at 598.

 In his first petition, prior to Bryant's dismissal, plaintiff averred, in relevant part:

3. At all times herein mentioned, Defendant [Blanke Baer], *acted by and through its agents,* servants, and employees, including Defendant Bryant. . . .

\* \* \* \* \* \*

6. Plaintiff in his capacity as Technical Director demanded and insisted that defendants insure [sic] that certain food products . . . [complied with] 21 C.F.R. § 113 et seq.

\* \* \* \* \* \*

8. On or about June 7, 1988, Plaintiff was terminated from his employment with Defendant Blanke Baer by Defendant Bryant and others *acting for Defendant Blanke Baer.* Plaintiff was discharged for making the complaints . . . and because defendants feared he would make further complaints to others.

9. The conduct of Defendants in discharging Plaintiff was willful, wanton, malicious. (Emphasis added.)

Rule 55.05 requires "a short and plain statement of the facts showing that the

pleader is entitled to relief." When determining whether a petition sets forth sufficient facts to support a claim, we liberally construe the allegations, and impliedly include "reasonable inferences fairly deducible from the facts stated." *Commercial Bank of St. Louis County v. James,* 658 S.W.2d 17, 21–22 (Mo. banc 1983).

When liberally construed, plaintiff's petition does not state facts setting out a cause of action against individual defendant Bryant. There are no allegations that Bryant individually participated in the wrongful discharge. Plaintiff's petition clearly states that Bryant was *acting for* defendant Blanke Baer when he terminated plaintiff. While defendant Bryant may have had actual knowledge of the wrongful discharge, we find that defendant Bryant did not participate in an individual capacity in the discharge.

Because plaintiff failed to state a cause of action against defendant Bryant, the dismissal of Bryant was proper. Based on plaintiff's petition, we conclude that defendant Bryant's joinder was pretensive, and the venue statute for actions against corporations, § 508.040, is applicable.[4] The action accrued and Blanke Baer's customary business takes place in St. Louis County. While Blanke Baer has a registered agent in St. Louis City, a registered agent for service of process is not an agent within the meaning of § 508.040. *Wadlow v. Donald Lindner Homes, Inc.,* 654 S.W.2d 644, 647 (Mo.App.1983). Therefore, venue was properly transferred from St. Louis City to St. Louis County. Point denied.

Plaintiff's motion to supplement the record on appeal is granted. Defendant's motions to strike the supplement and to dismiss the appeal are denied.

The judgment of the trial court is reversed and the cause is remanded for a new trial consistent with this opinion.

SIMON and KAROHL, JJ., concur.

---

**4.** Section 508.040 states: "Suits against corporations shall be commenced either in the county where the cause of action accrued, ... or in any county where such corporations shall have or usually keep an office or agent for the transaction of their usual and customary business."