

# SUPREME COURT OF MISSOURI
## en banc

JOHN TEMPLEMIRE,    )
    )
    Appellant,    )
    )
vs.    )    No. SC93132
    )
W & M WELDING, INC.,    )
    )
    Respondent.    )

### APPEAL FROM THE CIRCUIT COURT OF PETTIS COUNTY
The Honorable Robert L. Koffman, Judge

*Opinion issued April 15, 2014, and modified on Court's own motion May 27, 2014*

John Templemire (hereinafter, "Templemire") appeals from a jury verdict entered in favor of W & M Welding, Inc. (hereinafter, "Employer") on Templemire's claim of retaliatory discharge in violation of section 287.780, RSMo 2000,[1] after Templemire sought workers' compensation benefits and was discharged from his employment. Templemire raises two claims of instructional error regarding: (1) the proper causation standard an employee must demonstrate to make a prima facie case for retaliatory discharge under this statute and (2) whether an employee is entitled to submit an instruction regarding an employer's alleged pretextual motive for the employee's discharge.

---

[1] All statutory references are to RSMo 2000 unless otherwise indicated.

This Court holds that to make a submissible case for retaliatory discharge under section 287.780, an employee must demonstrate his or her filing of a workers' compensation claim was a "contributing factor" to the employer's discrimination or the employee's discharge. To the extent the decisions in *Hansome v. Northwestern Cooperage Co.*, 679 S.W.2d 273 (Mo. banc 1984), and *Crabtree v. Bugby*, 967 S.W.2d 66 (Mo. banc 1998), are inconsistent with this decision, they are overruled. This Court need not reach Templemire's alternative claim of instructional error regarding pretext. The circuit court's judgment is reversed, the case is remanded.[2]

## Factual and Procedural History

Employer hired Templemire in October 2005 to work as a painter and general laborer whose job duties included driving trucks and washing parts in the wash bay. On January 9, 2006, Templemire was injured in the course and scope of his employment when a large metal beam fell from a forklift and crushed his left foot. Templemire's injury required surgery and the installation of plating and screws into his foot. Templemire reported the injury to Employer and filed a workers' compensation claim for which he received benefits.

Approximately three to four weeks following his injury, Templemire was cleared to return to work with certain restrictions. Templemire was instructed to wear a protective boot on his injured foot while at work and was prohibited from climbing

---

[2] This Court transferred this case after an opinion by the Missouri Court of Appeals, Western District. Portions of the court of appeals opinion are incorporated without further attribution.

ladders. The following month, Templemire's physician added a restriction preventing Templemire from driving a vehicle with a clutch. In July 2006, Templemire's physician ordered that he only perform seated work due to continuing complications from his injury. In September 2006, the seated restriction was lifted, but Templemire's physician implemented new restrictions, which included restraining him from climbing stairs, pushing, pulling, and standing longer than one hour without a fifteen-minute break.

As a result of these restrictions, Employer placed Templemire on "light duty" when he returned to work even though light duty work was not available when Templemire returned. Employer's owner, Gary McMullin (hereinafter, "McMullin"), accommodated the restrictions and created a light duty work assignment for Templemire by assigning him to be a tool room assistant to Nick Twenter (hereinafter, "Twenter").

On November 29, 2006, Templemire remained on light duty. McMullin received a request from a customer to have a railing washed and painted for pick up later that afternoon. Templemire testified that when he arrived at work that morning, he did not speak to McMullin. Instead, Twenter informed Templemire that he would need to wash the railing, but that it was not ready. Twenter then assigned him to complete other tasks while the railing was prepared for washing. Templemire completed these tasks and returned to the job site. Around 1:50 p.m., Templemire went toward the wash bay to wash the railing. Before reaching the wash bay, Templemire stopped to rest his foot, which was infected.

During this break, McMullin confronted Templemire and cursed at him because the railing had not been washed. Templemire tried to explain the railing had just arrived

in the wash bay, and he intended to wash the railing as soon as his break was over. After continuing to curse at Templemire, McMullin discharged Templemire effective immediately. Templemire asked McMullin if he was sure he wanted to fire him "because [he] was going to go home and call workman's [sic] comp?" to which McMullin replied, "I don't give a f--- what you do, this is my f---ing place."

After being terminated, Templemire contacted Liz Gragg (hereinafter, "Gragg"), the insurance adjuster on his workers' compensation claim. Gragg subsequently contacted McMullin to discuss Templemire's discharge. Gragg's notes from her conversation with McMullin reflected that, after Gragg indicated Templemire had work restrictions that required him to take a break, McMullin "went on a [tirade] about [Templemire] 'milking' his injury and that he can sue him for whatever reason that is what he pays his premiums for and the [attorneys]."

Templemire subsequently filed suit against Employer pursuant to section 287.780 alleging he was discharged in retaliation for filing a workers' compensation claim. At the trial, McMullin characterized Templemire as a "high maintenance employee" and disputed Templemire's account of what transpired between them. McMullin testified he placed the railing in the wash bay early in the morning. McMullin directed Templemire to wash the railing immediately and to disregard any other assignments from Twenter or anyone else until the washing was complete. McMullin returned to check on Templemire's progress two hours later and found the railing unwashed and Templemire taking a break. McMullin testified that Templemire told him that he needed a break for his foot and if McMullin did not like it, he could take it up with Templemire's physician.

4

McMullin advised Templemire that he did not work for Templemire's physician and discharged Templemire for insubordination.

Templemire presented evidence that McMullin yelled at him due to this injury and referred to other workers who had been injured as "whiners." Templemire also offered testimony from former employees who were belittled as a result of their injuries and who did not receive work accommodations. One witness testified he was discharged shortly after filing a workers' compensation claim. Another witness testified that he overheard McMullin yell at Templemire, "[a]ll you do is sit on your a-- and draw my money" during the argument that resulted in Templemire's discharge. Templemire's immediate discharge was contrary to Employer's progressive discipline policy, which was submitted into evidence. Templemire presented evidence about another employee who received multiple disciplinary write-ups and had a drug problem but had not been discharged. By contrast, after returning to work, Templemire received his only disciplinary write-up for failing to wear a paint mask while in the paint booth. Despite this one issue, Templemire was regarded as a good employee who performed his tasks efficiently.

During the jury instruction conference, Templemire argued MAI-23.13,[3] the applicable MAI-approved verdict director, misstated the law insofar as it required a finding that Templemire's filing of a workers' compensation claim was the exclusive factor in Employer's decision to terminate him to prevail on his claim. Templemire offered an alternative instruction stating the jury could find in his favor if the filing of the workers' compensation claim was a contributing factor to Employer's decision to

[3] MAI 23.13 has been replaced with MAI 38.04.

5

discharge him.[4]  Alternatively, Templemire submitted a pretext instruction, which advised the jury that it could find exclusive causation if it found that Employer's stated reason for his discharge was a mere pretext, rather than the true reason stated.[5]  The circuit court refused both of Templemire's instructions and advised the jury it had to find the filing of a workers' compensation claim was the exclusive factor considered by Employer when it terminated Templemire for him to prevail on his claim.  The jury returned a verdict in Employer's favor.  After an opinion by the court of appeals, this Court granted transfer.[6]  Mo. Const. art. V, sec. 10.

**Standard of Review**

Whether a jury was instructed properly is a question of law that this Court reviews *de novo*.  *Edgerton v. Morrison*, 280 S.W.3d 62, 65 (Mo. banc 2009).  "Instructional errors are reversed only if the error resulted in prejudice that materially affects the merits

---

[4] Templemire's rejected verdict director stated:  "On the claim of plaintiff for compensatory damages for retaliatory discharge against defendant, your verdict must be for plaintiff if you believe:
    First, plaintiff was employed by defendant, and
    Second, plaintiff filed a workers' compensation claim, and
    Third, defendant discharged plaintiff, and
    Fourth, plaintiff's filing of the workers' compensation claim was a contributing
    factor in such discharge, and
    Fifth, as a direct result of such discharge plaintiff sustained damage."

[5] Templemire's rejected pretext instruction stated:  "You may find that plaintiff exercising his workers' compensation rights was the exclusive cause of defendant's decision to discharge plaintiff if the defendant's stated reason for its decision are not the true reasons, but are a pretext to hide retaliation against plaintiff for exercising his workers' compensation rights."

[6] The Missouri Association of Trial Attorneys and The St. Louis and Kansas City chapters of the National Employment Lawyers Association filed amicus briefs in support of Templemire.  The Missouri Chamber of Commerce and Industry and The Missouri Organization of Defense Lawyers filed amicus briefs in support of Employer.

of the action." *Bach v. Winfield-Foley Fire Protection Dist.*, 257 S.W.3d 605, 608 (Mo. banc 2008).

Generally, "[w]henever Missouri Approved Instructions contains an instruction applicable to the facts of a case, such instruction shall be given to the exclusion of any other instructions on the same subject." Rule 70.02(b). Rule 70.02 further provides that departure from an applicable MAI constitutes error, with its prejudicial effect to be determined judicially. Rule 70.02(b)-(c). If, however, a particular MAI does not state the substantive law accurately, it should not be given. *State v. Celis-Garcia*, 344 S.W.3d 150, 158 (Mo. banc 2011).

### Section 287.780 Causation Standard

Templemire argues the circuit court erred in refusing his verdict director that modified the applicable MAI by substituting "contributing factor" for the "exclusive cause" language. Templemire claims that submitting the MAI as written misstates the law. Templemire asserts the MAI's use of the phrase "exclusive cause" is contrary to the plain language of section 287.780 and this Court's recent decisions construing the Missouri Human Rights Act ("the MHRA") and public policy wrongful termination claims, which both hold liability attaches if the employer's prohibited motive was a "contributing factor" in the employee's subsequent discharge.

Generally, an employer can discharge an at-will employee for any reason. *Keveney v. Missouri Military Acad.*, 304 S.W.3d 98, 101 (Mo. banc 2010). There are exceptions and limits, however, to the at-will employment doctrine. For example, an employer cannot terminate an at-will employee for being a member of a protected class

based on "race, color, religion, national origin, sex, ancestry, age or disability." *Fleshner v. Pepose Vision Institute, P.C.*, 304 S.W.3d 81, 92 (Mo. banc 2010) (quoting section 213.055 of the MHRA). Additionally, this Court has adopted the following public policy exception to the at-will employment doctrine:

> An at-will employee may not be terminated (1) for refusing to violate the law or any well-established and clear mandate of public policy as expressed in the constitution, statutes, regulations promulgated pursuant to statute, or rules created by a governmental body or (2) for reporting wrongdoing or violations of law to superiors or public authorities…. If an employer terminates an employee for either reason, then the employee has a cause of action in tort for wrongful discharge based on the public-policy exception.

*Id.* at 92.[7]

### Section 287.780's Historic Construction

Section 287.780 is a statutory exception to the at-will employment doctrine and provides: "No employer or agent shall discharge or in any way discriminate against any employee for exercising any of his [or her] rights under this chapter. Any employee who has been discharged or discriminated against shall have a civil action for damages against his [or her] employer." This section was enacted in 1925 as a part of the original Missouri workers' compensation law. *Christy v. Petrus*, 365 Mo. 1187, 295 S.W.2d 122, 124 (Mo. 1956). At the time of enactment, the workers' compensation law was construed liberally in favor of the worker and the award of benefits. *Maltz v. Jackoway-Katz Cap*

---

[7] The legislature has provided statutory protection against discrimination or discharge for other whistle-blowing activities as well. *See* section 191.908.1 (protection for reporting Medicaid fraud); section 162.068.1 (protection for school employees who report sexual misconduct committed by teachers and other school employees); and section 84.342.1 (protection for municipal police officers).

*Co.*, 336 Mo. 1000, 82 S.W.2d 909, 911 (Mo. 1934). Section 287.780 was amended in 1973 to provide employees with the private right of action that remains today.

The first case to address the statute after the legislature provided employees with a private cause of action was *Mitchell v. St. Louis County*, 575 S.W.2d 813 (Mo. App. E.D. 1978). In *Mitchell*, the plaintiff alleged her discharge was discriminatory because it occurred six months after she filed a workers' compensation claim for a back injury. *Id.* at 814. The court affirmed the circuit court's entry of a directed verdict in the employer's favor after the employer demonstrated the plaintiff was discharged due to excessive absenteeism unrelated to the injury. *Id.* The court stated, "It is palpable that a cause of action lies only if an employee is discharged discriminatorily by reason of exercising his or her rights" under the workers' compensation law. *Id.* at 815. Here, the employer presented evidence of a valid and nonpretextual motive to discharge the plaintiff. *Id.*

A plaintiff's need to demonstrate a causal connection between his or her exercise of workers' compensation rights and the subsequent discharge was discussed in *Davis v. Richmond Special Road Dist.*, 649 S.W.2d 252 (Mo. App. W.D. 1983). The court explained:

> By its wording, section 287.780 is, to the extent of authorizing recovery of damages by a civil action, penal in nature. The statute predicates recovery upon the discharge or discrimination of an employee for the exercise of his or her workers' compensation rights. By its wording, the statute does not convey an intent that mere discharge of an employee gives rise to a claim against the employer. On the other hand, the statute reveals a legislative intent that *there must be a causal relationship between the exercise of the right by the employee and his discharge by his employer arising precisely from the employee's exercise of his rights, and upon proof, that the discharge was related to the employee's exercise of his or her rights.* In its enactment of section 287.780, the General Assembly did not prohibit

9

(although it could have) the discharge of employees merely during the pendency of a claim for workers' compensation. On the other hand, the General Assembly, by its wording of section 287.780, enacted a prohibition against employers (to the extent they might be liable for damages in a separate civil proceeding) not to discriminate or discharge employees because of the employee's exercise of his or her rights relative to a workers' compensation claim. *Stated another way, the legislative intent conveyed by the statute is to authorize recovery for damages if, upon proof, it be shown that the employee was discriminated against or discharged simply because of the exercise of his or her rights regarding a workers' compensation claim.*

*Id*. at 255. (Emphasis added).

For the first time in *Hansome v. Northwestern Cooperage Co.*, this Court set forth the elements a plaintiff must demonstrate to make a submissible case for a claim brought pursuant to section 287.780: "(1) plaintiff's status as employee of defendant before injury, (2) plaintiff's exercise of a right granted by Chapter 287, (3) employer's discharge of or discrimination against plaintiff, and (4) *an exclusive causal relationship* between plaintiff's actions and defendant's actions." *Hansome*, 679 S.W.2d at 275. (Emphasis added). This Court did not analyze or interpret the wording of section 287.780; rather, it cited *Mitchell* and *Davis* as support for its declaration that the exclusive causation standard was appropriate for this cause of action. This Court further explained, "Causality does not exist if the basis for discharge is valid and nonpretextual." *Id*. at 277, n.2.

This Court reaffirmed the holding in *Hansome* in *Crabtree v. Bugby*. In *Crabtree*, the employer challenged the verdict director submitted by the discharged employee that directed the jury to return a verdict in her favor if it found "as *a direct result* of plaintiff's filing of a claim for [workers'] compensation, defendant discharged plaintiff." *Crabtree*,

967 S.W.2d at 71. (Emphasis added). This Court found the instruction was erroneous because it permitted the jury to return a verdict for the plaintiff even though the reasons for her discharge included causes other than filing a workers' compensation claim. *Id*. This Court held the jury should have been instructed that it had to find the exclusive cause of the plaintiff's discharge was the filing of her claim as articulated in *Hansome*. *Id*. This Court explained:

> Once this Court by case law has resolved the elements of a cause of action pursuant to section 287.780, neither the trial court nor the court of appeals is free to redefine the elements in every case that comes before them. Mo. Const. art. V, sec. 2. Similarly, this Court should not lightly disturb its own precedent. Mere disagreement by the current Court with the statutory analysis of a predecessor Court is not a satisfactory basis for violating the doctrine of stare decisis, at least in the absence of a recurring injustice or absurd results.[8]

*Id*. at 71-72.

The disagreement regarding the statutory analysis was set forth in the dissenting opinion in *Crabtree*. The dissent stated section 287.780 did not contain any language suggesting that an employee is entitled to relief only when he or she has been discharged

_____

[8] Echoing this concern in *Crabtree*, the dissenting opinion likewise asserts the reason this Court has overruled *Hansome* and *Crabtree* is due solely to a change of heart by the changed membership of the Court, not based upon a legal need. Undoubtedly, the membership of this Court, as well as that of the legislature, has changed dramatically since *Hansome* was decided in 1984 and *Crabtree* in 1998. However, today's decision stems from this Court's duty to address an appellant's properly raised challenge requesting reexamination of this Court's precedent in light of the current legal landscape. Moreover, reexamination is warranted given the legislature's expansive enactment of a number of statutes that protect Missouri's citizens from discrimination, most notably passage of the MHRA. Given the legislature's demonstrated intent that discrimination, based on any number of factors, will not be tolerated in the workplace, it is appropriate for this Court to reevaluate the accuracy of the exclusive causation standard.

11

"solely" or "exclusively" because the employee sought the protection afforded by workers' compensation. *Id*. at 73. The dissent also characterized the holding in *Hansome* as "an aberration" in which the "exclusive" language "appears to be plucked out of thin air" because neither *Mitchell* nor *Davis* used the word "exclusive" to describe the causation standard. *Id*. at 74.

*Hansome* and its progeny remained unquestioned until this Court's recent decision in *Fleshner v. Pepose Vision Institute, P.C.*. In *Fleshner*, this Court explicitly recognized for the first time the public policy exception to the at-will employment doctrine. *Fleshner*, 304 S.W.3d at 92. The defendant in *Fleshner* modeled its jury instruction after the MAI-approved instruction that relied on the *Hansome* factors to prove a claim of retaliatory discharge and used the exclusive cause language. This Court noted, "Nowhere in the workers' compensation laws does 'exclusive causal' or 'exclusive causation' language appear." *Id*. The Court acknowledged there was a key distinction between workers' compensation retaliation cases and public policy exception cases, in that the former arises under the statute, while the latter arises under the common law. *Id*. at 93. *Fleshner* found the exclusive causation standard was "inconsistent with the proximate cause standard typically employed in tort cases." *Id*. Moreover, this Court found application of the exclusive causation standard would discourage employees from reporting their employers' violations of the law or for refusing to violate the law. *Id*. In other words, application of the exclusive causation standard "would result in an exception that fails to accomplish its task of protecting employees who refuse to violate the law or public policy." *Id*.

12

*Stare Decisis*

Templemire acknowledges the applicable holdings in *Hansome* and *Crabtree* but urges this Court to reexamine those cases in light of this Court's recent criticisms in *Fleshner*. Templemire argues *Hansome* and *Crabtree* should be reversed or modified because they erroneously analyzed section 287.780 and the appropriate causation standard from its inception. Employer and its amici argue that this Court should adhere to the principles of *stare decisis* and continue to follow the precedent set by *Hansome* and *Crabtree*.

"The doctrine of stare decisis promotes security in the law by encouraging adherence to previously decided cases." *Independence-Nat. Educ. Ass'n v. Independence Sch. Dist.*, 223 S.W.3d 131, 137 (Mo. banc 2007). "But, the adherence to precedent is not absolute, and the passage of time and the experience of enforcing a purportedly incorrect precedent may demonstrate a compelling case for changing course." *Watts v. Lester E. Cox Medical Centers*, 376 S.W.3d 633, 644 (Mo. banc 2012) (quoting *Med. Shoppe Intern., Inc. v. Dir. of Revenue*, 156 S.W.3d 333, 335 (Mo. banc 2005)). "[W]here it appears that an opinion is clearly erroneous and manifestly wrong, the rule [of] stare decisis is never applied to prevent the repudiation of such a decision." *Southwestern Bell Yellow Pages, Inc. v. Dir. of Revenue*, 94 S.W.3d 388, 390-91 (Mo. banc 2002) (quoting *Novak v. Kansas City Transit, Inc.*, 365 S.W.2d 539, 546 (Mo. banc 1963).

Here, adherence to *stare decisis* is ill-advised when one carefully examines this Court's *sua sponte* creation of the exclusive causation standard articulated in *Hansome*.

13

*Hansome*'s reliance on *Mitchell* and *Davis* to support an exclusive causation standard is unfounded. Neither *Mitchell* nor *Davis* contains any reference whatsoever to a heightened or exclusive causation standard for a plaintiff to prevail on a claim for retaliatory discharge under the workers' compensation law. *Mitchell* did not address causation explicitly, while *Davis* recognized causation was an element of the claim but did not allude to an "exclusive causation" standard by any means. The dissent in *Crabtree* aptly described the holding in *Hansome* as "an aberration" in which the "exclusive" language "appears to be plucked out of thin air" with no support in the caselaw or statutory interpretation. As the learned jurist Justice Oliver Wendell Holmes Jr. admonished, "It is revolting to have no better reason for a rule of law than that so it was laid down in the time of Henry IV. It is still more revolting if the grounds upon which it was laid down have vanished long since, and the rule simply persists from blind imitation of the past." Oliver Wendell Holmes, *The Path of the Law*, 10 Harv. L. Rev. 457, 469 (1897).[9] Thus, the holdings in *Hansome* and *Crabtree* are clearly erroneous and *stare decisis* should not be applied to prevent their repudiation.[10]

---

[9] The dissenting opinion cites another learned jurist, Justice Louis Brandeis, for the proposition that "it is more important that the applicable rule of law be settled than that it be settled right." Staunch adherence to *stare decisis* based solely on this notion would result in a society in which insidious discrimination still would subject school children to being segregated into schools that were purportedly separate but equal, women could not serve on juries, interracial marriage still would be subject to criminal prosecution, and crime victims would be prohibited from offering impact testimony during the punishment phase of death penalty trials.

[10] The dissenting opinion accuses this Court of failing to acknowledge that the common law is the exclusive prerogative of the judiciary, for which this Court is the ultimate authority, and that *stare decisis* is at its strongest in cases of statutory interpretation. This Court did not employ the tenets of statutory construction when it articulated the exclusive

*Legislative Inaction*

Employer and its amici assert the legislature had ample opportunity to correct any misstatement by this Court of the exclusive causation standard and chose not to do so, particularly when it substantially revised the workers' compensation laws in 2005.[11] Templemire argues that legislative inaction is not a factor that trumps other rules of statutory construction, and that section 287.780 has been construed improperly since *Hansome*.

If this Court rejects a litigant's pleas to overrule existing caselaw, a party can seek redress with the legislature to implore it to change an incorrect or otherwise undesirable interpretation of a statute. *Med. Shoppe*, 156 S.W.3d at 334. This Court explained the fallacy of relying upon legislative inaction as tacit approval of an interpretation of a statute:

> The General Assembly's inaction has sometimes been interpreted to be approval of the Court's reading of a statute. Legislative inaction, however,

---

causation standard in *Hansome* or when it reaffirmed the standard in *Crabtree*. Rather, *Hansome* merely turned to common law causation principles to fill the causation void in an otherwise silent statute. In doing so, this Court misconstrued the holdings in *Mitchell* and *Davis*, which the dissent does not contest. Only now is this Court examining the plain meaning of the statute to determine legislative intent to discern the appropriate causation standard.

[11] The dissenting opinion asserts that today's decision encroaches on the legislature's implicit adoption of the exclusive causation standard given the extensive amendments to the workers' compensation statutes in 2005 and fears this decision will invite the legislature to do away with the private right of action altogether. The dissent's fear is speculative at best given the legislature's enactment of a number of statutes that protect citizens from discrimination since *Hansome* was decided. It was this Court's misguided proclamation of the exclusive causation standard in *Hansome* that effectively eviscerated the legislature's plain intent to prohibit employers from discriminating "*in any way*" against an employee who exercised his or her workers' compensation rights.

can just as well mean that the forces arrayed in favor of changing the law are matched by the forces against changing it. In truth, the match does not have to be an even one, for the legislative process in our republican form of government is designed more to prevent the passage of legislation than to encourage it. An incorrect judicial interpretation of a statute may also stand simply because the legislature has paid no attention to it. Thus, it is speculative to infer legislative approval from legislative inaction.

*Id.* at 334-35.

"Workers' compensation law is entirely a creature of statute, and when interpreting the law the court must ascertain the intent of the legislature by considering the plain and ordinary meaning of the terms and give effect to that intent if possible." *Hayes v. Show Me Believers, Inc.*, 192 S.W.3d 706, 707 (Mo. banc 2006) (quoting *Greenlee v. Dukes Plastering Service*, 75 S.W.3d 273, 276 (Mo. banc 2002)). "Insight into the legislature's object can be gained by identifying the problems sought to be remedied and the circumstances and conditions existing at the time of the enactment." *Bachtel v. Miller County Nursing Home Dist.*, 110 S.W.3d 799, 801 (Mo. banc 2003).

The plain language of section 287.780 prohibits an employer from discharging or *in any way* discriminating against an employee for exercising his or her workers' compensation rights. At the time section 287.780 was enacted and when this Court decided *Hansome*, workers' compensation laws were to be construed liberally. This Court's imposition of the exclusive causation standard ran afoul of this statutory imperative. Even if this Court strictly construed the statute as it must do pursuant to section 287.800, "[a] strict construction of a statute presumes nothing that is not expressed." *Robinson v. Hooker*, 323 S.W.3d 418, 423 (Mo. App. W.D. 2010). "The operation of the statute must be confined to 'matters affirmatively pointed out by its

terms, and to cases which fall fairly within its letter.'" *Id.* (quoting *Allcorn v. Tap Enters., Inc.*, 277 S.W.3d 823, 828 (Mo. App. S.D. 2009)). Undisputedly, section 287.780 does not contain the word "exclusively" or "solely" or "only" to support the exclusive causation standard articulated in *Hansome*.[12] Further, the legislative dictate is clear that it is inappropriate for an employer to give *any* consideration to the fact that an employee filed a workers' compensation claim when making employment decisions.

Moreover, in *Reed v. Sale Memorial Hosp. and Clinic*, 698 S.W.2d 931, 935 (Mo. App. S.D. 1985), the court explained that section 287.780 is an exception to Missouri's employment at-will doctrine and that the statute declared "public policy" by addressing "the evil to be remedied," which was "want of an effective remedy for retaliatory discharge arising out of the exercise of rights" under the workers' compensation law. *Id.* As it stands today, an employer's discrimination against or discharge of an employee who

---

[12] *Compare*, Ala. Code § 25-5-11.1 ("No employee shall be terminated by an employer *solely* because the employee has instituted or maintained any action against the employer to recover workers' compensation benefits …."); Haw. Rev. Stat. § 386-142 ("It shall be unlawful for any employer to suspend or discharge any employee *solely* because the employee suffers any work injury which is compensable under this chapter and which arises out of and in the course of employment with the employer unless it is shown to the satisfaction of the director that the employee will no longer be capable of performing the employee's work as a result of the work injury and that employer has no other available work which the employee is capable of performing."); Md. Code Labor & Emply, § 9-1105 ("An employer may not discharge a covered employee from employment *solely* because the covered employee files a claim for [workers'] compensation …."); N.M. Stat. Ann. § 52-1-28.2A ("An employer shall not discharge, threaten to discharge or otherwise retaliate in the terms or conditions of employment against a worker who seeks workers' compensation benefits for the *sole* reason that that employee seeks workers' compensation benefits."); and Va. Code Ann. § 65.2-308A ("No employer or person shall discharge an employee *solely* because the employee intends to file or has filed a claim under this title or has testified or is about to testify in any proceeding under this title.").

17

exercises his or her rights under section 287.780 is acceptable so long as it is not the exclusive cause of the employer's action. Thus, the imposition of an exclusive causation standard effectively deprives an employee's right to remedy the evil of being discriminated against or discharged for exercising workers' compensation rights.

Hence, the reasoning in *Hansome*, and the cases it relied on, is flawed. Therefore, to the extent *Hansome*, *Crabtree*, and their progeny require a plaintiff to demonstrate his or her exercise of workers' compensation rights was the exclusive cause of his or her discharge or discrimination, they no longer should be followed.

*Appropriate Causation Standard*

Because the exclusive causation standard is unsupported by the plain language of section 287.780 and the caselaw relied upon in *Hansome* and *Crabtree*, the issue remains what causation standard must a plaintiff demonstrate to make a submissible case for retaliatory discharge under this statute. Templemire and his amici argue this Court should align workers' compensation discrimination cases with MHRA employment discrimination and public policy exception cases by adopting the "contributing factor" standard. Employer and his amici disagree, urging this Court to adopt a "heightened" or "motivating factor" test to avoid marginally competent employees from filing the pettiest of claims in an effort to avoid a valid termination.

"There is nothing in the entire field of law which has called forth more disagreement, or upon which the opinions are in such a welter of confusion" than causation. *Prosser and Keeton on Torts*, §41 at 263 (5th ed. 1984). This Court explained the confusion that has permeated tort law due to the different terminology used by the

18

classic Prosser and Keeton treatise and the Restatement (Second) of Torts in *Callahan v. Cardinal Glennon Hosp.*, 863 S.W.2d 852 (Mo. banc 1993). "The 'but for' causation test provides that 'the defendant's conduct is a cause' of the event if the event would not have occurred 'but for' that conduct." *Callahan*, 863 S.W.2d at 860-61 (quoting *Prosser*, §41 at 266). Prosser uses the term "proximate cause" to encompass all "but for" cases, except for the certain limited exception to the "two fires case" in which each of two or more causes would be sufficient, standing alone, to cause the plaintiff harm.[13]

By comparison, Restatement section 430 requires a plaintiff to demonstrate the defendant was the legal cause of his or her harm for liability to attach. Section 431 provides that legal cause is shown when the defendant's conduct is a "substantial factor" in bringing about the harm. However, section 432 instructs that the defendant's conduct is not a "substantial factor" unless it meets the "but for" test. Thus, the confusion arises

---

[13] "Two fires case" is an illustration used to demonstrate when the application of the "but for" causation test fails to test for causation in fact accurately. The scenario entails two independent tortfeasors who set fires being swept by the wind toward a piece of property, with either fire sufficiently strong, standing alone, to burn down the property. Before either fire reaches the property, they combine and burn the property. If each actor negligently set his or her respective fire, each could claim that he or she is not a factual cause of the harm under the "but for" causation rule because, in the absence of setting one fire, the other fire would have burned the property. Therefore, because both actors could make the same argument, a court that applied the "but for" causation test effectively would bar the victim from recovery from either of two negligent actors who were obvious factual causes of the damages. "Thus, application of the 'but for' test "leads to a result that is almost always condemned as violating both an intuitive sense of causation and good legal policy. Cases like the two fires cases have consequently put the simple but-for test in doubt and courts have in fact modified that test to deal with such cases." *See* 1 Dan B. Dobbs, Paul T. Hayden and Ellen M. Bublick, *The Law of Torts*, §189 at 631-32 (2d ed. 2011).

wherein the Restatement labels all cases in which legal cause is present as requiring the "substantial factor" analysis but provides they must meet the "but for" causation test.

This Court recognizes that whether one adheres to the Restatement or Prosser, this historical causation analysis typically pertains to common law tort and negligence actions as opposed to statutory actions. However, as stated in *Fleshner*, an exclusive causation standard is inconsistent with the proximate cause standard typically employed in tort cases. *Fleshner*, 304 S.W.3d at 93. Moreover, this Court cautioned that these semantic differences are of little consequence in Missouri because "under the MAI we do not use the terms 1) 'proximate cause,' 2) 'but for causation,' or 3) 'substantial factor' when instructing the jury." *Callahan*, 863 S.W.2d at 863. *See also Sundermeyer v. SSM Regional Health Services*, 271 S.W.3d 552, 555 (Mo. banc 2008). Rather, "[s]uch terms are standards by which the courts determine whether a submissible case has been made and instructing the jury by use of such terms creates the potential for confusion." *Thomas v. McKeever's Enterprises, Inc.*, 388 S.W.3d 206, 216 (Mo. App. W.D. 2012) (internal citations omitted). "We merely instruct the jury that the defendant's conduct must 'directly cause' or 'directly contributed to cause' plaintiff's injury." *Callahan*, 863 S.W.3d 863 and *Sundermeyer*, 271 S.W.3d 555.

In recent years, this Court has addressed what causation standard Missouri plaintiffs must demonstrate to make a submissible case for various forms of employment discrimination. In *Daugherty v. City of Maryland Heights*, 231 S.W.3d 814 (Mo. banc 2007), this Court held a plaintiff must prove his or her protected status under the MHRA was a "contributing factor" to his or her discrimination or discharge to make a

20

submissible case. *Daugherty*, 231 S.W.3d at 820. This Court made it clear that Missouri's discrimination safeguards under the MHRA were not identical to the federal standards and could offer greater protection. *Id*. at 818-19. As such, this Court rejected the application of the burden-shifting analysis that *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), employed in federal discrimination cases, commonly referred to as the "motivating factor" analysis. Further, the plain statutory language of the MHRA did not require a plaintiff to prove that discrimination was a "substantial" or "determining" factor in an employment decision. *Id*. at 819. The MHRA is clear that if an employer considers age, disability or other protected characteristics when making an employment decision, an employee has made a submissible case for discrimination. *Id*.

Two years later, this Court reaffirmed the application of the "contributing factor" analysis to the plaintiff's MHRA retaliation claims in *Hill v. Ford Motor Co.*, 277 S.W.3d 659, 665 (Mo. banc 2009), and once again rejected the burden-shifting framework employed under *McDonnell Douglas*. This Court explained that although claims for discrimination and retaliation under the MHRA were contained in different sections of the act, there was no substantive difference between the claims with respect to causation. *Id*.

The following year, this Court addressed the appropriate standard a plaintiff must satisfy to prevail on a wrongful discharge claim pursuant to the public policy exception in *Fleshner*. This Court rejected the exclusive causation standard, as discussed previously, and adopted the "contributing factor" test articulated in *Daugherty* and *Hill*. *Fleshner*, 304 S.W.3d at 94-95. This Court found both the MHRA and the public policy exception

21

modified Missouri's at-will employment doctrine by instructing that an employer can terminate employees, but its reasoning cannot be improper. *Id*. at 94. This Court explicitly renounced a heightened standard, stating:

> Likewise, cases involving both the MHRA and the public-policy exception turn on whether an illegal factor played a role in the decision to discharge the employee. The evidence in both types of cases directly relates to the employer's intent or motivation. The employer discharges the employee, asserting a reason for the termination that may or may not be pretextual. Under the MHRA, if race, color, religion, national origin, sex, ancestry, age, or disability of the employee was a "contributing factor" to the discharge, then the employer has violated the MHRA. The employer's action is no less reprehensible because that factor was not the only reason. Similarly, if an employee reports violations of law or refuses to violate the law or public policy as described herein, it is a "contributing factor" to the discharge, and the discharge is still reprehensible regardless of any other reasons of the employer.

*Id*. at 94-95.

Taking into account the statutory language and this Court's precedent in other discrimination cases, this Court holds that the "contributing factor" standard should apply to causes of action that arise pursuant to section 287.780. Adopting the "contributing factor" standard serves two purposes. First, the legislature's use of the phrase, "*in any way*," is consistent with this Court's analysis of the "contributory factor" language articulated in *Daughtery*, *Hill*, and *Fleshner*. Therefore, application of the "contributory factor" standard fulfills the purpose of the statute, which is to prohibit employers from discharging or *in any way* discriminating against an employee for exercising his or her rights under chapter 287. Second, the standard now aligns workers' compensation discrimination with other Missouri employment discrimination laws.

While this Court recognizes a fundamental difference between the purposes of the MHRA and the workers' compensation laws as a whole, there can be no tolerance for employment discrimination in the workplace, be it based upon protected classes such as gender, race or age, or an employee blowing the whistle on an employer's illegal practices in violation of public policy, or for exercising workers' compensation rights. Discrimination against an employee for exercising his or her rights under the workers' compensation law is just as illegal, insidious, and reprehensible as discrimination under the MHRA or for retaliatory discharge under the public policy exception of the at-will employment doctrine.

Employer and his amici, along with this Court in *Crabtree*, expressed the concern that abandoning the exclusive causation standard would render the statute a "job security act." *Crabtree* stated to find otherwise would permit "an employee who admittedly was fired for tardiness, absenteeism, or incompetence at work [to] still be able to maintain a cause of action for discharge if the worker could persuade a factfinder that, in addition to the other causes, a cause of discharge was the exercise of rights under the workers' compensation law. Such a rule would encourage marginally competent employees to file the most petty claims in order to enjoy the benefits of heightened job security." *Crabtree*, 967 S.W.2d at 72.

This concern was legitimate at the time section 287.780 was amended to include a private cause of action because it was one of only a few statutes that limited the at-will employment doctrine. Since that time, the legislature has seen fit to carve out additional

23

statutory exceptions to the at-will employment doctrine, with the MHRA being one of the most significant, which has demonstrated that these concerns are unwarranted.[14]

*Prejudice*

In addition to demonstrating the circuit court erred in requiring a faulty instruction, Templemire bears the burden of demonstrating he suffered prejudice. Prejudicial error "is an error that materially affected the merits and outcome of the case." *D.R. Sherry Const., Ltd. v. American Family Mut. Ins. Co.*, 316 S.W.3d 899, 904 (Mo. banc 2010).

Here, Templemire demonstrated he suffered prejudice from the submission of the "exclusive cause" language as opposed to the "contributing factor" language in the verdict director. Templemire presented substantial evidence of Employer's discrimination against him due to his filing of a workers' compensation claim that a reasonable trier of fact could determine directly caused or contributed to cause his discharge. There was evidence that McMullin repeatedly yelled at Templemire and complained to others about his injury, characterizing Templemire as a "high maintenance employee" who "s[a]t on his a-- and dr[e]w my money." Other injured workers were belittled for their injuries and described as "whiners," did not receive accommodations when injured, and one was discharged shortly after filing a workers' compensation claim.

---

[14] Other statutory exceptions to the at-will employment doctrine enacted since 1973 that protect an employee from being discharged or discriminated against for exercising a variety of rights, in addition to those statutory exceptions noted in footnote 7, include: section 494.460.1 (jury service); section 595.209 (responding to a subpoena in a criminal matter); section 288.375.1 (testifying in employment security hearings); and section 115.102.1 (serving as an election judge).

Templemire also presented evidence that his discharge was contrary to Employer's progressive discipline policy. Finally, Templemire presented evidence of McMullin's statements to Gragg, the workers' compensation insurance claims adjuster, that he believed Templemire was "milking his injury" and that Templemire could sue him for whatever reason he wanted because he paid his premiums and attorneys to handle the issues.

By instructing the jury that it had to determine Templemire was discharged exclusively in retaliation for filing a workers' compensation claim, any evidence of Templemire's purported insubordination, even in the face of substantial and direct evidence of discrimination, negated Templemire's claim. As stated previously, the statute does not dictate such a standard and the law will not tolerate even a portion of an employer's motivation to be discriminatory when discharging an employee. Accordingly, Templemire is entitled to a new trial with the submission of a verdict director that instructs the jury that it must determine whether his filing of a workers' compensation claim was a "contributing factor" to his discharge.

## Pretext

Alternatively, Templemire argues that should this Court retain the exclusive causation standard, the circuit court erred in refusing to submit his instruction regarding Employer's pretextual reason for his discharge. This Court need not resolve whether Templemire was entitled to a pretext instruction given this Court's holding that the exclusive causation standard should be followed no longer. Templemire raised this claim in the alternative, and his concerns regarding pretext are no longer valid given that a jury

now will be instructed to determine whether Templemire's exercise of his rights under the workers' compensation law was a contributing factor in Employer's decision to discharge him.

## Conclusion

The circuit court's judgment is reversed, and the case is remanded.

_____
GEORGE W. DRAPER III, JUDGE

Russell, C.J., Breckenridge, Stith and
Teitelman, JJ., concur; Fischer, J., dissents
in separate opinion filed; Wilson, J., concurs
in opinion of Fischer, J.



# SUPREME COURT OF MISSOURI
## en banc

JOHN TEMPLEMIRE,

          Appellant,

    v.

W & M WELDING, INC.,

          Respondent.

No. SC93132

### DISSENTING OPINON

I respectfully dissent from the majority's overruling of *Hansome v. Nw. Cooperage Co.*, 679 S.W.2d 273 (Mo. banc 1984), and *Crabtree v. Bugby*, 967 S.W.2d 66 (Mo. banc 1998). The Court is not free to decide this case, which is merely a matter of statutory construction, as though presented with the issue of causation as a matter of first impression.

What makes this country's legal system the envy of the modern democratic world, and what sets it apart from most others, is the reliability of the outcome of cases based on the doctrine of *stare decisis*. The principal opinion gives short shrift to the doctrine of *stare decisis*, and it fails to recognize that adherence to precedent is most important when that precedent concerns settled questions of statutory interpretation. The principal

opinion adopts a new statutory interpretation of an identical statute based solely on arguments that this Court has already considered and rejected twice. I would affirm the circuit court, which dutifully followed this Court's prior decisions in *Hansome* and *Crabtree*.

Section 287.780, RSMo 2000, permits an employee to bring a civil action against his or her employer for discharging the employee in retaliation for seeking workers' compensation benefits. In *Hansome*, this Court held that, for a workers' compensation retaliation claim against the employer pursuant to § 287.780, the employee must prove that his or her action in seeking workers' compensation benefits was the "exclusive cause" of termination. 679 S.W.2d at 275, 277 n.2.

Fourteen years later, this Court reaffirmed that interpretation of § 287.780. *Crabtree*, 967 S.W.2d at 71. In *Crabtree*, this Court endorsed the exclusive cause standard of *Hansome* because any other rule "would encourage marginally competent employees to file the most petty [sic] claims in order to enjoy the benefits of heightened job security." *Id.* The Court rejected the plaintiff's argument to give a more expansive construction to § 287.780 than that adopted in *Hansome* due, in part, to the absence of any intervening legislative action. *Id.* On the questions of *stare decisis*, this Court stated: "***[T]his Court should not lightly disturb its own precedent. Mere disagreement by the current Court with the statutory analysis of a predecessor Court is not a satisfactory basis for violating the doctrine of stare decisis, at least in the absence of a recurring injustice or absurd results.***" *Id.* (emphasis added).

2

Other than 16 years and the changing membership of this Court, nothing has changed that can explain why there is a legal need to change the standard of causation required by § 287.780.[1]  The statutory language never provided, and still does not provide, a causation standard.  This Court was originally forced to construe the statute in *Hansome* and provide a standard for the element of causation.  This Court in *Crabtree* and *Hansome* declared that "exclusive cause" was the law.  Now this Court declares "contributing factor" is the law.  The doctrine of *stare decisis* would have little practical or intellectual value if all it took to change the law was the passage of time and Court membership.  As Justice Sonia Sotomayor put it most succinctly, "[E]stablishing that a decision was wrong does not, without more, justify overruling it."  *Alleyne v. United States*, 133 S. Ct. 2151, 2164 (2013).

Adherence to precedent is especially vital in my view with respect to prior cases interpreting statutes.  Justice Louis Brandeis said it well in 1932:

> Stare decisis is usually the wise policy, because in most matters it is more important that the applicable rule of law be settled than that it be settled right.  This is commonly true even when the error is a matter of serious concern, provided correction can be had by legislation.  But in cases involving the Federal Constitution, where correction through legislative action is practically impossible, this court has often overruled its earlier decisions. . . . In cases involving the Federal Constitution the position of this court is unlike that of the highest court of England, where the policy of stare decisis was formulated and is strictly applied to all classes of cases.

---

[1] The principal opinion concludes that it is appropriate for this Court to reexamine the law because the legislature since has enacted the MHRA, which created private causes of action for specific categories of discrimination not related to filing a workers' compensation claim.  This rationale seems misplaced in light of the fact that the legislature is presumed to have adopted this Court's prior interpretation of § 287.780 if it does not take any action, particularly in the context of enacting workers' compensation legislation modifying causation standards without changing this Court's prior construction of § 287.780, as explained *infra*.

3

> Parliament is free to correct any judicial error; and the remedy may be promptly invoked.

*Burnet v. Coronado Oil & Gas Co.*, 285 U.S. 393, 406 (1932) (Brandeis, J., dissenting) (internal citations omitted), *overruled by Helvering v. Mountain Producers Corp.*, 303 U.S. 376, 387 (1938). The United States Supreme Court has continually upheld this principle. *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 138-39 (2008) (reaffirming a prior interpretation of a statute and stating that "*stare decisis* in respect to statutory interpretation has 'special force,' for 'Congress remains free to alter what we have done'"); *California v. F.E.R.C.*, 495 U.S. 490, 500 (1990) (expressly adopting Justice Brandeis's view that statutory interpretations are given greater *stare decisis* effect than constitutional interpretations); *see also Alleyne*, 133 S. Ct. at 2163 & n.5 (stating that the force of *stare decisis* is at its lowest point in cases concerning procedural rules that implicate constitutional protections).

As these cases make clear, *stare decisis* is most essential regarding prior statutory interpretations because it is there that the rule of law and respect for the separation of powers meet. The General Assembly is presumed to rely on this Court's prior decisions interpreting statutes. *State ex rel. Howard Elec. Co-op. v. Riney*, 490 S.W.2d 1, 9 (Mo. 1970) ("[T]he General Assembly must be presumed to have accepted the judicial and administrative construction of its enactments . . . ."); *see State v. Grubb*, 120 S.W.3d 737, 740-41 (Mo. banc 2003) (Teitelman, J., dissenting) (noting that the General Assembly is

4

presumed to know the law in enacting statutes and stating that it had implicitly adopted a prior court of appeals decision by amending the law but not overruling the case).[2]

Cases interpreting statutes carry the legislature's approval when it does not take action to overrule them, and the legislature ratifies them by allowing them to stand while enacting particular legislation on the same subject matter. *See F.E.R.C.*, 495 U.S. at 500 ("We are especially reluctant to reject this presumption in an area that has seen careful, intense, and sustained congressional attention."). To overrule a legislative ratification of this Court's prior statutory interpretations is to encroach on the function of the legislature.[3]

---

[2] *State ex rel. Howard Elec. Co-op.* is the last holding on point. Although this Court has stated that the presumption of legislative reliance on precedent is disfavored, this Court has never overruled its own prior decision after stating that the presumption is insufficient reasoning, on its own, to reaffirm the prior decision. The *Medicine Shoppe* case, cited by the majority, reaffirmed this Court's prior interpretation of a statute. *Med. Shoppe Int'l, Inc. v. Dir. of Revenue*, 156 S.W.3d 333, 335 n.5 (Mo. banc 2005).

[3] Although the People are ultimately sovereign and can change a constitution by amendment, it is up to this Court to say what the Missouri Constitution means. Mo. Const. art. V, sec. 3 (stating that this Court shall have exclusive appellate jurisdiction in all cases involving the validity of a statute); *see Marbury v. Madison*, 5 U.S. 137, 177 (1803) ("It is emphatically the province and duty of the judicial department to say what the law is."); *see also City of Boerne v. Flores*, 521 U.S. 507, 519 (1997) (holding that section five of the Fourteenth Amendment gives Congress power to *enforce* its provisions, not power to *interpret* them). Constitutional reinterpretation is not disfavored to the extent statutory reinterpretation is disfavored because it is more problematic to infer that the People have approved or ratified a prior constitutional interpretation without explicit amendment, as compared to legislation, which is relatively easier to enact.

Although the People may amend the Constitution to overrule or approve of a constitutional interpretation, this kind of amendment has been rare and is difficult to achieve. *E.g.*, U.S. Const. amend. XI (overruling *Chisholm v. Georgia*, 2 U.S. 419 (1793)). And although the Missouri Constitution is amended more readily than the United States Constitution, and, therefore, cases interpreting it deserve somewhat greater *stare decisis* effect, the amendment process is still cumbersome and "much more difficult than a legislative change to correct an unwarranted interpretation of a statute." *Med. Shoppe Int'l, Inc.*, 156 S.W.3d at 335 n.5.

5

The principal opinion cites various cases for the proposition that this Court may overrule its wrong decisions. Only one of those cases overruled a prior statutory interpretation—a 56-year old decision that the Court held could not be reconciled with the language of the statute. *Sw. Bell Yellow Pages, Inc. v. Dir. of Revenue*, 94 S.W.3d 388, 391 (Mo. banc 2002). In the other cases cited by the majority, this Court either reaffirmed its prior statutory interpretation or considered only a prior constitutional interpretation or common law doctrine and not a questions of statutory interpretation. *See Watts v. Lester E. Cox Med. Ctrs.*, 376 S.W.3d 633 (Mo. banc 2012) (interpreting article I, section 22(a), involving the right of trial by jury); *Independence-Nat'l Educ. Ass'n v. Independence Sch. Dist.*, 223 S.W.3d 131, 137 (Mo. banc 2007) (interpreting article I, section 29, involving the right to bargain collectively); *Med. Shoppe Int'l, Inc.*, 156 S.W.3d 333 (reaffirming this Court's prior interpretation of a statute); *Novak v. Kansas City Transit, Inc.*, 365 S.W.2d 539, 547 (Mo. banc 1963) (per curiam) (overruling a prior decision that refused to recognize a cause of action under the common law).

The principal opinion also points to *Fleshner v. Pepose Vision Institute, P.C.*, 304 S.W.3d 81, 92-93 (Mo. banc 2010), in support of its holding that the Court need not stick with the exclusive cause standard set out in *Hansome* and *Crabree*. In *Fleshner*, the Court decided that "contributing factor" causation was better than "exclusive cause" for wrongful discharge claims based on the public policy exception to the at-will doctrine. *Id.* The "key distinction" between such wrongful termination claims and workers' compensation retaliation claims is that public policy termination claims arise under the common law of torts. *Id.*; slip op. at 12. What the majority fails to acknowledge is that

the common law is the exclusive prerogative of the judiciary, for which this Court is the ultimate authority.[4] Although this Court has adopted the contributing factor causation standard for retaliation claims under the MHRA, as the principal opinion notes, this Court in *Hill v. Ford Motor Co.* merely reaffirmed its interpretation of the MHRA. 277 S.W.3d 659, 665 (Mo. banc 2009) (reaffirming *Daugherty v. City of Maryland Heights*, 231 S.W.3d 814, 819-20 (Mo. banc 2007)); slip op. at 21.

The holdings in *Hansome* and *Crabtree* were not based on judicially created common law doctrine, nor were they interpretations of an infrequently amended state constitution or the tough-to-amend United States Constitution. They were interpretations of a Missouri statute, on which the General Assembly is presumed to rely, and to which this Court should give the greatest *stare decisis* effect. *State ex rel. Howard Elec. Co-op.*, 490 S.W.2d at 9.

The principal opinion states that this Court did not "analyze or interpret the wording of section 287.780" in *Hansome*. Slip op. at 10. This Court in *Hansome* quoted § 287.780, then stated the four elements necessary to make a claim. 679 S.W.2d at 275-76. It did cite *Davis* and *Mitchell* as precedent for all four elements, but then analyzed those cases and another court of appeals case regarding the element of causation. *Id.* at

---

[4] Because *stare decisis* is at its strongest in cases involving statutory interpretation, it necessarily is at its weakest in cases involving common law doctrines. Although the rule of law still demands that this Court not lightly overrule its prior common law decisions (because it is imperative to retain them in the interests of reliance, predictability, and stability), this Court is the ultimate authority on questions of Missouri common law. In deciding whether to overrule prior decisions based solely on common law doctrine, this Court does not face the same separation of powers concerns it faces in deciding whether to overrule prior interpretations of statutes and, to a lesser degree, the United States and Missouri constitutions.

7

275-76 & n.2. This Court recognized that the text of § 287.780 did not provide a specific causation standard. Then, this Court's opinion analyzed how enacting § 287.780 necessarily modified the at-will employment doctrine and how that justified the holdings of the prior court of appeals decisions construing § 287.780 to require the filing of a workers' compensation claim to be the exclusive cause for the termination. *Id.* at 275 n.2. While reasonable minds may differ in hindsight as to whether that construction was correct, there is no doubt that this Court was required to, and did, construe § 287.780 in *Hansome*.

The presumption of legislative reliance on *Hansome* and *Crabtree* has even greater weight here because the General Assembly overhauled the workers' compensation law in 2005. Not only did it expressly abrogate other prior cases of this Court and the court of appeals **by name and citation**, see, e.g., *Drewes v. Trans World Airlines, Inc.*, 984 S.W.2d 512, 514-15 (Mo. banc 1999); *Kasl v. Bristol Care, Inc.*, 984 S.W.2d 852, 853-54 (Mo. banc 1999); *Bennett v. Columbia Health Care*, 80 S.W.3d 524, 531-32 (Mo. App. 2002), the 2005 amendments took affirmative steps to abrogate a different *causation standard*, while leaving this Court's decisions in *Hansome* and *Crabtree* undisturbed. The General Assembly thereby demonstrated its intent to retain the exclusive cause standard for workers' compensation retaliation claims.[5]

---

[5] In 2005, the General Assembly repealed 35 sections of the revised statutes of Missouri and enacted 40 new sections "relating to workers' compensation law." Act of Mar. 30, 2005, S.B. 1 & 130, 2005 Mo. Laws 907, 907 (codified as amended at chapters 286 and 287, RSMo Supp. 2013). This Court and the court of appeals had previously held that, to obtain a workers' compensation award for accidental injury, an employer need only show that the employee's work was a "substantial factor" in the cause of the injury. *Drewes*, 984 S.W.2d at 514-15; *Kasl*, 984

8

Contrary to the suggestion in the principal opinion, the 2005 amendments discredit the attempt to characterize this case as merely involving "legislative inaction." The General Assembly took affirmative steps that demonstrate its intent to retain the exclusive cause standard. It enacted a new causation standard for determining workers' compensation coverage of accidental injuries by expressly abrogating two of this Court's prior decisions by name. It could have enacted a new causation standard for workers' compensation retaliation cases by abrogating *Hansome* and *Crabtree*. It did not. Accordingly, the principal opinion's failure to adhere to this Court's prior interpretation of § 287.780 offends the separation of powers by encroaching on the General Assembly's ratification of the exclusive cause standard. Even if the "contributing factor" standard is the better rule, this Court should not usurp the legislative function by re-deciding settled questions of statutory construction due *solely* to a change of heart.

Finally, it should be noted that the principal opinion assumes that, if the legislature dislikes this Court's decision to change the law from "exclusive cause" to "contributing factor," the General Assembly is free to abrogate this holding by passing a bill to reinstate the exclusive cause standard. Once this Court puts this burden on the legislature, however, there is no reason why the General Assembly could not go the next step and repeal § 287.780 to eliminate the private cause of action entirely. Rather than

---

S.W.2d at 853-54; *Bennett*, 80 S.W.3d at 531-32. The General Assembly expressly abrogated those three decisions and replaced the "substantial factor" causation test with the "prevailing factor" causation test. 2005 Mo. Laws at 910-11 (codified at §§ 287.020(3)(1), 287.020(10), RSMo Supp. 2013).

9

risk watching such a debate, I would adhere to the principle of *stare decisis*, reaffirm this Court's holdings in *Hansome* and *Crabtree*, and affirm the circuit court's judgment.

_____
Zel M. Fischer, Judge

10